ALBANY, August, 1821.

BUTLER v. KENT.

---

BUTLER *against* M. KENT and others.

THE declaration in this cause contained two counts, which alleged, in substance, that the defendants were duly appointed, according to law, *managers*, to conduct a certain public lottery, called " The fifth Class of the Medical Science Lottery," and, as such, had the power to superintend the drawing of the same ; and that it thereupon became their duty respectively, before they acted as managers, to take and subscribe an oath or affirmation, well and faithfully to execute the trust reposed in them as managers, and to file such oath in the office of the secretary of state ;—to superintend in person the drawing of the said lottery ; and to see that the numbers of the tickets, and the blanks and prizes, were well and duly prepared, &c. &c. That the plaintiff was a dealer in lottery tickets, for the purpose of buying and selling such tickets and making a profit by the sale thereof, at an advanced price, by retail ; and that in full faith and confidence that the said lottery, called the *fifth* class of the Medical Science Lottery, would be well and faithfully conducted by the defendants, the plaintiff purchased of the defendants, as such managers, on the 7th of *April*, 1818, eleven hundred tickets, at the rate of twenty-five dollars and one cent, each, for the purpose of selling

No action lies, at the suit of an individual against an officer, for misbehaviour in his office, either from misfeasance or nonfeasance, unless the plaintiff can show a special damage peculiar to himself.

In cases of *tort*, the particular damages for which the plaintiff brings his action, must be the legal and natural consequence of the wrongful act of which he complains ; and in such case, the special damages must be particularly stated in the declaration.

No action lies against the managers of a public lottery, at the suit of a dealer in lottery tickets, who had purchased a large number of tickets, for

the purpose of selling them, at a profit, on the ground, that by the negligent and improper conduct of the defendants, in managing and conducting the drawing of the lottery, &c. the public confidence in the fairness of the drawing was wholly lost, and the demand for tickets, and the price of them, thereby so greatly diminished, that the plaintiff could not sell his tickets, which remained on his hands, and were drawn blanks.

the same by retail; and that had the lottery been well and faithfully superintended and managed by the defendants, and had they conducted themselves according to their duty, as managers, the plaintiff would have made large gains and profits by selling by retail the tickets so purchased by him; yet the defendants, not ignorant of the premises, but unmindful of their duty, did not, respectively, before they entered on the duties of their appointment, take and subscribe the oath or affirmation prescribed by law, and file the same in the secretary's office; nor did they superintend the drawing of the said lottery; nor did they prepare, or cause to be prepared, the numbers, and the blanks and prizes, for the lottery wheels; nor did they put or cause to be put the numbers of blanks and prizes into the wheels; nor did they draw or cause to be drawn the numbers, blanks, and prizes from the wheels, fairly and in succession, one by one; nor did they draw or cause to be drawn all the numbers from the wheels; but wholly and grossly neglected their duty, and permitted one *J. H. Sickels* to act as manager in such lottery, without being legally appointed and sworn to discharge the duties of manager, and to superintend the making up of numbers, blanks, and prizes for the lottery wheels, and draw the numbers, &c. during the greater part of the time the lottery was drawing; and that the defendants conducted the drawing of the said lottery, in such a careless, negligent, unfaithful, and fraudulent manner, that whole handfuls of tickets were permitted to be taken out of the number wheels, at one time, and some of them permitted to be dropped about the wheels, on the floor or stage on which the wheels were placed; that many numbers were permitted to be in the lap of the said *J. H. Sickels*, at the same time, so that he did not, or could not call the same in the order in which they were drawn out of the wheel, but called them out of their regular order; WHEREBY the public confidence in the integrity and fairness of the drawing of the said lottery was wholly lost, and the demand for tickets in the same by purchasers, and the price of such tickets, by retail, were greatly diminished, in so much that the plaintiff could not sell his tickets by retail, so that the same remained on his hands, and were drawn by him as

blanks, so that he lost the monies which he paid for the same, and the profits which ought to have been derived from the sale of them: to the damage of the plaintiff, twenty thousand dollars.

There was a general demurrer to the declaration and joinder.

*Slosson,* in support of the demurrer, contended, 1. That the defendants being public officers, acting under the authority of the state, and giving a bond to the people, for the true and faithful discharge of their trust, are not liable to the suit of a private person.

2. That the injury complained of being common with all holders of tickets, an action will not lie at the suit of any one individual, unless *special damage* is shown.

3. That the special damage which is necessary to support the action must not only be *peculiar* to the plaintiffs, but *direct,* and *immediately consequential* of the act. (*Co. Litt.* 56. *a.* 5 *Co.* 73. *a.* 1 *Com. Dig.* 180. *Carthew,* 193. 1 *Esp. N. P. Cases,* 148.)

4. That in this case no special damage was shown, it not being pretended but that the tickets held by the plaintiff were drawn, and the blanks and prizes fairly declared and accounted for.

5. That no action can be sustained for a loss arising merely from a speculation on public opinion ; and that the alleged special damage in this case from the depression of the price of tickets, in consequence of the influence of the conduct of the managers on public opinion, was too remote to be the foundation of an action,

6. That the plaintiff does not aver in his declaration that he could have sold his tickets, or that he had any offers for the purchase of them.

*Fay,* contra, insisted, that though by the statute, the people may have an action against the defendants, yet that does not take away the common law right of action of any individual. The defendants as lottery managers were mere ministerial officers. (*Schinott* v. *Bumstead,* 6 *Term Rep.* 646—649.) The injury in this case was not common to

all the community, but only to the purchasers of tickets in this lottery. An action will lie against a postmaster, a commissioner of excise, a street paver, and various other public ministerial officers, for a breach or omission of duty. (2 *Bl. Rep.* 906. 1141. 2 *Ld. Raym.* 938. 3 *Wils.* 461.)

SPENCER, Ch. J., delivered the opinion of the Court. Although the declaration states many particulars of mismanagement, either by the defendants, or their agent, it nowhere charges them with fraud. The amount of the *gravamen* is, that they were negligent in conducting the preparation for and the drawing of the lottery; that the plaintiff had bought tickets in the lottery, for the purpose of selling, and that, in consequence of the negligent manner in which the drawing and managing the lottery was conducted, public confidence in the integrity and fairness of the drawing of the lottery was lost, the demand for tickets and the price of the tickets were diminished, so that the plaintiff was unable to sell his tickets; and they remained unsold, and were drawn blanks. The declaration, it is true, states, that the defendants conducted the drawing of the lottery in such a careless, negligent, unfaithful, and fraudulent manner, that whole handfuls of tickets were permitted to be taken out of the number wheels at a time, &c.; this does not amount to a charge of direct and personal fraud, but merely to carelessness and negligence; and it is averred that this carelessness and negligence led only to calling the numbers out of their order, and not as they were drawn from the wheel. The present action is founded on the misbehaviour of the defendants in a public trust, whereby a private injury to the plaintiff is supposed to have been committed. It is an action of the first impression, and must be governed by known and established principles.

I consider the point beyond all dispute, that for a misbehaviour of an officer, in his office, either from misfeasance or nonfeasance, no one can maintain an action against him, unless he can show a special and particular damage to himself. Without such special and particular damage, he has no title to call the officer to an account. Lord *Coke* (*Co. Litt.* 56. *a.*) says, in a case which bears strong analogy to this,

" that if a way be a common way, if any man be disturbed to go that way, or if a ditch be made overthwart the way, so as he cannot go, yet shall he not have an action upon his case ; and this the law provided, for avoiding of multiplicity of suits, for if any one man might have an action, all men might have the like." He proceeds to say, that if he had his horse fall into the ditch, whereby he received hurt and loss, there, for his special damage, which is not common to others, he shall have an action upon his case. This principle was solemnly recognized, and acted upon in *Pain* v. *Patrick and others*, (3 *Mod. Rep.* 289.) The same case is reported in 1 *Salk.* 12. as *Payne* v. *Patridge and others.* In *Ivason* v. *Moore*, (1 *Salk.* 16. 1 *Ld. Raym.* 486.) which was an action on the case for stopping up a highway leading to the plaintiff's colliery, with intent to deprive him of the profit thereof, *per quod*, he lost the profit, &c. and his coals were spoiled for want of buyers, Chief Justice *Holt* and *Rokesby*, (*contra Tourton* and *Gould*,) were of opinion, that no action lay, the way appearing to be a public highway. They held that the plaintiff had no better right than any body else, and that a man could not have a particular action *without a particular injury, or a particular right*, which, they said, were the grounds upon which all actions are founded, and to which they must conform. The same principles were adopted in *Williams's* case. (5 *Co. Rep.* 73.) Baron *Comyns* cites the cases in *Salkeld*, as law. (1 *Com. Dig.* 180. *Action upon the case*, B. 2.) The same principle was adopted by Lord *Kenyon* in *Herbert* v. *Groves*, (1 *Esp. Rep.* 148.) which was afterwards confirmed by the Court. The analogy between the cases cited, and the present, consists in this, that the defendants have undertaken a duty which is common, in regard to all those who purchase tickets in that lottery ; that they owe no peculiar duty, and are under no particular obligation to the plaintiff, as to their conduct, other than such as is common to all the purchasers and holders of tickets in that lottery. The defendants, then, stand in the same relation to the plaintiff, as they do to a great number of other persons. So, in the case of a public road, all who choose to travel it, have an equal right ; digging a ditch across the road is an injury

alike to all, but no one can maintain an action, unless he can show a particular injury, an injury peculiar to himself; not merely that he could not pass the road, but that some special damage happened to him.

The particular injury stated by the plaintiff is, that by the defendants' conduct and negligence, in the instances pointed out, the public confidence in the integrity and fairness of the drawing of the lottery was wholly lost, and the demand for tickets by purchasers, and the price of the tickets, were greatly diminished, so that the plaintiff could not sell his tickets by retail, and the same were drawn as blanks.

I perceive, in these allegations, no charge of any particular injury to the plaintiff; nor do I perceive any particular right of the plaintiff which has been violated. The injury, if any, is common to all those who held tickets in that particular lottery: and we see that in such a case it appertains to the public only to avenge the injury. If there has been any unfaithfulness or dishonesty on the part of the managers of this lottery, they are responsible, under the bonds which the statute (1 R. L. 270.) requires them to give; and possibly, also, by indictment.

There is another view of the subject, which, I apprehend, equally concludes against the plaintiff: In cases of *torts*, it is necessary to show that the particular damage, in respect of which the plaintiff proceeds, must be the legal and natural consequence of the wrongful acts imputed to the defendant. (1 *Chitty's Pl.* 388. 8 *East's Rep.* 3.) It is another rule, that the special damage must be particularized, in order that the defendant may be able to meet the charge, if it be false; if it be not so stated, it cannot be given in evidence. And if the action be not sustainable, independent of the special damage, the declaration is bad on demurrer. (1 *Chitty's Pl.* 389. 1 *Saund.* 243. n. 5. 8 *Term Rep.* 132.) A declaration by a victualler, for calling his wife a whore, whereby several customers left his house, is too general. So, in a declaration for slander of title to an estate, whereby the plaintiff lost the sale of it, is insufficient. (1 *Chitty's Pl.* 389.) The same doctrine is held in *Mason* v. *Moore*, (1 *Salk.* 16.) The only allegation of special damage is, that in consequence of

ALBANY,
August, 1821.

he loss of public confidence in the integrity and fairness of the drawing of the lottery, the plaintiff could not sell his tickets by retail. In the case last cited, Lord *Holt* was of opinion, that it was not enough to say that the plaintiff lost customers, or that buyers would not come, without showing that buyers were coming and were hindered. It is impossible to conceive any thing more vague and untriable, than the loss of a market for any commodity, from the want of public confidence.

The cases cited by the plaintiff's counsel are inapplicable. The case of *Ashby* v. *White*, (2 Ld. Raym. 938.) came under the consideration of this Court in *Jenkins* v. *Waldron*, (11 Johns. Rep. 120.) and we held that to enable a voter whose vote was refused, to maintain an action, the refusal to admit the vote must appear to be fraudulent and malicious ; but there is no analogy between the cases. The injury, if any, is peculiar to the party whose vote is rejected ; the right to vote is enjoyed by many ; but the injury is not of a common nature. The case of a postmaster, through whose negligence a letter, or any thing transmitted by the post, is lost, is different, and is distinguishable from this case ; for the injury is a particular one to the party who suffers the loss.

Upon the whole, we are clearly of opinion, that the present action is not maintainable, and that the defendants must have judgment.　　　　　　　　　　Judgment for the defendants.