## MOODY *against* BAKER.

SLANDER. The declaration alleged a contract of marriage between the plaintiff and Parkman Baker; and that the defendant, to prevent the intended marriage, in a conversation with Parkman Baker, declared that he had had which a marriage contract, between the plaintiff and another, was violated by the latter; though the plaintiff had a remedy against the latter for a breach of the contract.

*It seems,* that recovering satisfaction for the damage occasioned by the slander, would be a bar to an action for a breach of the marriage contract.

In such an action, a conversation between the one who contracted marriage with the plaintiff, and a third person, it not being offered to support the testimony of the former, who had been sworn as a witness, was *held* not admissible in evidence.

What shall be considered proof of special damage charged in such a case.

In slander, a new trial will not be granted for excessive damages, if there are no grounds to believe the jury were influenced by passion, prejudice or partiality.

An action of slander lies, for words not actionable in themselves; in consequence of

carnal intercourse with the plaintiff; by reason whereof Parkman Baker refused to marry her.

The cause was tried at the Cayuga circuit, 1824, before THROOP, C. Judge.

The verdict being for the plaintiff, for $1450, a motion was now made in arrest of Judgment on the ground of the insufficiency of the declaration, and for a new trial upon a case. The latter depended mainly upon the objection, that the judge had, in the course of the trial, refused to allow Halsey Phelps, a witness for the defendant, to testify to a conversation between him and Parkman Baker, who had also been sworn as a witness. The offer of this evidence was made by the defendant, with a view to show that Parkman Baker had not been influenced to break off the match by any thing which the defendant had said.

The main question arose on the motion in arrest. The facts on which both motions rested are more particularly stated in the opinions of the judges.

*J. L. Richardson*, and *T. J. Oakly*, for the motion in arrest, cited 4 Rep. 17; Cro. Car. 269, 322; Cro. Eliz. 787; Cro. Jac. 484, 5; 2 Bulstr. 267, 276, 277; Cro. Jac. 162, 422; Cro. Car. 404, 269.

But they relied mainly on *Vicars* v. *Wilcocks*, (8 East, 1,) as in point; and which was recognized in *Butler* v. *Kent.* (19 John. 228.) Also *Morris* v. *Langdale*, (2 B. & P. 284.)

In support of the motion for a new trial, they cited 10 John. 281; 15 id. 493; 1 Phil. Ev. 213.

*A. Spencer*, contra, cited 3 Rep. 16; Cro. Eliz. 787; Com. Dig. action on the case for defamation, D. 30; 1 Rol. Abr. 35; 2 Esp. Dig. N. Y. ed. 87; Bull. N. P. 7; 8 Wentw. Pl. 274, 5, 6: 3 Burr. 1345; 1 Phil. Ev. 230; 4 Cowen, 356.

*Curia*, per WOODWORTH, J. The words spoken are not in themselves actionable. If the action is sustainable, it must be on the ground of special damage.

It is contended on the part of the defendant, that no action can be maintained on the facts alleged in the declara-

son. The case of *Vicars* v. *Wilcocks*, (8 East. 1,) is relied on as an authority in point. In that case it was held, that when special damage is necessary to sustain an action for slander, it is not sufficient to prove a mere wrongful act of a third person, induced by the slander; but the special damage must be a legal and natural consequence of the words spoken. It appeared, that in consequence of speaking the words, the plaintiff had been dismissed from his employment before the end of the term for which he had contracted. Lord Ellenborough proceeded on the ground, that this was an illegal consequence; a mere wrongful act of the master for which the defendant was not answerable; and enquired whether any case could be mentioned, of an action of this sort, sustained by proof only of an injury by the tortious act of a third person. If the doctrine here advanced is well founded, it disposes of the case before us.

The learned Judge does not refer to any authority in support of the decision. In my view, it seems to be a departure from well established principles, applicable to this species of action.

*Morris* v. *Langdale*, (2 B. & P. 284) was cited on the argument, as supporting the doctrine laid down by Lord Ellenborough. The plaintiff in that case stated, that he was a dealer in the funds, and, as such, had been accustomed to contract; that the defendant said of him, as such dealer, "he is a lame duck;" in consequence of which, divers persons refused to fulfil their contracts with him; and he was prevented from fulfilling his contracts with other persons. It was held, that it did not sufficiently appear, either that the words were spoken of lawful contracts, or that the plaintiff was a lawful dealer in the funds; and that the declaration was therefore bad.

Part of the gravamen was, that divers persons refused to fulfil their contracts. If the test is, that the special damage must be the legal and natural consequence of the words spoken; and that the plaintiff is not entitled to recover because he had a right of action on his contract, it is surprising that this ground had not been taken by the counsel who argued. But it is not even suggested. The opinion of

the court also seems to be placed on other grounds. Its is true, Lord Eldon observed, that a doubt had arisen in the mind of the court, whether the special damage had been so laid as to support the action ; and that if the plaintiff had sustained any damage in consequence of the refusal of any persons to perform their lawful contracts with him, it is damage which may be compensated in actions brought by the plaintiff against those persons. These remarks were not necessary to the decision of the cause. Admitting them, however, to be correct, the case was not like the present. If persons had refused to fulfil their contracts with the plaintiff, he was entitled to recover damages. The court probably considered it substantially a contract for the payment of money ; in which case the refusal to pay by the debtor, in consequence of the speaking of slanderous words, would not be a ground of special damage.

Most, if not all the cases, for loss of marriage, to be met with in the books, allege a communication or treaty of marriage only ; and that the marriage, was lost by reason of speaking the words. (4 Co. 17. Cro. Car. 269, 322. Cro. Eliz. 787.)

By a communication, or treaty of marriage, must, I think, be understood, that the parties had contracted to marry each other. If this had not taken place, how can it be said correctly, that a marriage was lost? In this case a valid contract of marriage is set out in the declaration. That the action can be maintained, will not be questioned if it be shown that the law has given this remedy in cases analogous and similar in principle.

It is a general rule, that where a man has a temporal loss or damage by the wrong of another, he may have an action on the case, to be repaired in damages. (1 Com. Dig. action on the case, (A) p. 178.) If a party has several remedies for the same thing, he has an election to pursue either. (Co. Litt. 145. a.) But, after having recovered satisfaction for the injury from one person, he cannot afterwards proceed against any other person for a further satisfaction (3 Burr. 1354.)

ALBANY,
Feb. 1826.

Moody
v.
Baker.

The case of *Bird* v. *Randall*, (3 Burr. 1345,) was twice urged, and decided, after great consideration. The principles recognized and acted on by the court, if sound, are in my mind, decisive of the present question. It appeared that one Burford, by articles of agreement, covenanted to serve the plaintiff for five years as a journeyman ; and bound himself in the penalty of £100. After continuing a part of the time, the defendant procured and enticed him to depart ; which he accordingly did. The plaintiff sued Burford for the penalty, and recovered judgment against him ; but the money was not actually paid, until after the commencement of the action against the defendant. The question was, whether it was maintainable. It is remarkable that the point, whether the action could be sustained, (inasmuch as the plaintiff had a remedy on the contract,) was not even hinted at by the court or counsel. It is manifest, that no such notion of the law was then entertained ; for Lord Mansfield, who delivered the opinion of the court, observed that the case turned upon two points : 1. Whether the plaintiff could maintain the action, if the £100 recovered against the servant, had been actually received, before the commencement of the action ; and 2nd, if it could not, whether the receipt of the money subsequently, would vary the case. I cannot well conceive of a more perfect recognition, that the fact of an existing remedy on the contract formed no objection. All the reasoning of his Lordship goes clearly to prove this. The ground upon which he places the decision, is, that satisfaction had already been received ; which implies that if it had not, there was no obstacle in the way. This case is very analogous to the one before us. In each, there was a contract between the plaintiff and another person ; and in each, the attempt was to recover damages by proof of an injury sustained by the tortious act of a third person.

If then, the principle recognized in *Bird* v. *Randall*, would authorize a recovery, when there was a contract for service, upon which damages might be recovered, I think it will apply with greater force when there has been a con-

tract of marriage, and performance of it refused in conse-
quence of the slander of the defendant.    A contract of mar-
riage looks principally to a specific execution.   It is of a
very different nature and character from the preventing of
the fulfilment of a contract to pay a sum of money.   In the
latter case, the non-fulfilment of the contract by means of a
third person, would have no effect on the ability of the con
tracting party ; whereas, in a case of the specific execution
of a contract to marry, its value does not depend on the
ability of a person to pay damages.   It is, indeed, a tem-
poral loss, but of a character not capable of being wholly
repaired by the payment of money ; the only substitute the
law has devised.

But there are other cases which rest on the same princi-
ple.  If one slanders my title, whereby I am wrongfully dis-
turbed in my possession, though I have a remedy against
the disturber, yet I may have an action against him that
caused the disturbance.   (1 Bac. tit. action on the case, p.
98. Aleyn, 3.)   This is equally against the doctrine of Lord
Ellenborough ; for here damages are given, which were
caused by the tortious act of a third person.   Again, in the
action for enticing away another's servant, the servant is
always liable ; and yet the law is well settled, that the se-
ducer is also liable.   (2 Ld. Raym. 1116.   *Hart* v. *Al-
dridge*, Cowp. 54.   Reeve's Dom. Rel. 376.   4 Bac. Abr.
593.)

The doctrine contended for, strikes at the root of society;
and, in my view, overturns some of the well settled and re-
vered principles of the common law.   I cannot, therefore,
doubt that the declaration contains a good cause of action ;
and that the motion in arrest of judgment should be denied.

The next question is, whether there is ground for a new
trial.   The plaintiff proved the speaking of the words ; and
there existed a contract of marriage between Parkman Ba-
ker and the plaintiff.   This was proved by the admissions
and confessions of the defendant.   He confessed, that the
day had been fixed for their marriage.   The marriage was
broken off.   It is proven that the defendant admitted he had
told P. Baker these things, (meaning his pretended illicit
intercourse with the plaintiff,) and that he had once pre

/ented their marriage ; and wished yet to do so and desired others to assist him in preventing it.

The inference from all this is, not only that he once prevented it by his slanders, which is enough to maintain the action but that he entirely frustrated the marriage. The facts offered to be proved by Halsey Phelps, so far as respects Parkman Baker, were not offered as confirmatory of the evidence given by him ; nor to show that he had made declarations consistent with what he had sworn. The offer was to prove a conversation between two persons not parties to the suit, to make out a fact; that P. Baker was not influenced by his father's slanders ; but the offer went to what Phelps had told P. Baker, as well as what P. Baker had told the witness. As to the declarations of Phelps, they were clearly inadmissible. When the Judge rejected the evidence offered as one connected proposition, if the defendant intended, or wished to prove P. Baker's declarations to Phelps, as showing the consistency of his evidence, it was the duty of the counsel to offer it in that light, and with that view. The language of the Judge must have been, that he could not admit a conversation between two persons, not parties to the action, to be given in evidence. It is manifest, the defendant did not wish to give in evidence P. Baker's declarations unaccompanied with what Phelps told him. If the latter was not admissible, then the evidence offered was rightly rejected. The credibility of Parkman Baker was a question for the jury to decide. From the facts in the case, they were fully warranted in disregarding his testimony. The damages, although liberal, are not so extravagant as to require the interposition of the court. There are no grounds to believe the jury were influenced by passion, prejudice or partiality. The motion for a new trial must be denied.

SAVAGE, Ch. J. (*dissenting.*) Two motions are made in this case; 1. In arrest ; 2. For a new trial.

To determine the first question we must examine the declaration, to ascertain whether it contains any cause of action. The first count states, that at and previous to the

ALBANY,
Feb. 1826.

Moody
v.
Baker.

speaking of the slanderous words, one Parkman Baker had paid his addresses to the plaintiff in the way of courtship, with a view of contracting matrimony with her; that an engagement was formed, and a contract entered into, that they should be united by marriage. Yet the defendant, well knowing these facts, and with a view to prevent the marriage of the plaintiff with Parkman Baker, spoke the slanderous words in the declaration; charging the plaintiff with incontinence.

The second count is substantially like the first, varying the words.

The words spoken are not actionable in themselves, and it is only on account of the special damage, that the plaintiff can expect to recover.

It is contended, that as she has averred a contract of marriage with Parkman Baker, her remedy is on that contract; that the injury complained of was the consequence of an illegal act of a third person, for which the defendant is not answerable.

To support this position, we are referred to several cases, some of which I will briefly state.

In the case of *Morris* v. *Langdale*, (2 B. & P. 283,) the plaintiff being a dealer in stocks, the defendant said of him that he was a " lame duck," meaning that he had not fulfilled his contracts in respect of the stocks or funds. The special damage alleged was, that he lost great gains which he would have acquired by the fulfilment of his contracts; and others refused to fulfil their contracts with him, or to have any further dealings with him. Lord Eldon, in giving the opinion of the court, says, " a great part of the special damage consists in an allegation that other persons did not perform their contracts with him. Now, if the plaintiff has sustained any damage in consequence of the refusal of any persons to perform their lawful contracts with him, it is damage which may be compensated in actions brought by the plaintiff against those persons; and the law supposes that in such actions the plaintiff would receive a full indemnity."

The case of *Vicars* v. *Wilcocks*, (8 East, 1,) was an action of slander showing special damage. On the trial, it ap-

peared that the plaintiff was engaged for a year as a jour-
neyman rope maker, by J. O.; and that in consequence of
the words spoken by the defendant, (viz. that the plaintiff
had unlawfully cut some flocking cord of J. O.) the plain-
tiff was discharged by his master before the expiration of
the year. Lawrence, Justice, nonsuited the plaintiff, being
of opinion that the discharge of the plaintiff by his master
was not justified. It was of course wrongful, and he was
answerable to the plaintiff. The supposed damage was
the loss of those advantages which he was entitled to un-
der his contract, which he could not be considered as hav-
ing lost, as he had a right to claim them of his master.
Upon a motion to set aside the nonsuit, Lord Ellenborough
said, that " the special damage must be the legal and nat-
ural consequence of the words spoken; otherwise it did
not sustain the declaration; and here it was an illegal
consequence; a mere wrongful act of the master, for
which the defendant was no more answerable than if, in
consequence of the words, other persons had afterwards
assembled and seized the plaintiff and thrown him into a
horsepond by way of punishment for his supposed trans-
gression." This case seems to be recognized by this Court,
in *Butler* v. *Kent*, (19 John. 228.)

Several cases are cited to show, that when the plaintiff
has recovered for loss of marriage, no contract of marriage
is stated, but merely a communication of marriage. Such
is the report of Anne Davis' case, (4 Rep. 17.) So also in
*Holwood* v. *Hopkins*, (Cro. Eliz. 787,) though there the ac-
tion did not lie, as the words were not spoken to the person
who was in communication of marriage with the plaintiff,
but to a third person; and so the damage was collateral;
and no action would lie. (*Williams* v. *Linford*, 2 Leon,
111, contra, as to slander of title.) The same mode of
stating the communication of the intended marriage is
found in Cro. Jac. 162-3, and Cro. Car. 269.

On the other side, the case of *Bird* v. *Randall*, (3 Burr.
1346,) is relied on, to show that a person who seduces
another to violate his contract, is liable; unless he who
has violated his contract has made compensation. In that
case, Bird had covenanted with one Burford, by which

Burford was to serve as a journeyman five years; and bound himself in a penalty of £100. The defendant enticed Burford to violate his engagement; and on being sued for that cause, judgment was given for him, on the ground that, before the trial Burford had paid the penalty. Lord Mansfield seemed to take it for granted, that the defendant would have been liable, if the servant had not paid the penalty. Sir Fletcher Norton, Sol. Gen. in argument, cited the case of *Newman* v. *Zacharay,* (Aleyn, 3,) in which a case was put by Hale, of slander of title; where the person whose title is slandered shall have an action against him that caused the disturbance, though he has remedy against the trespasser. This last case is quoted by Bacon and Comyn, 1 Bac. Abr. 76, B.; 1 Com. Dig. 370, (C. 1.)

The case itself is as follows : "Newman sued Zacharay who was the plaintiff's shepherd, in an action on the case; for that two of his (the plaintiff's) sheep did estray, one of which being found again, the defendant affirmed to be the plaintiff's; whereupon, the plaintiff paid for the feeding of it, and caused it to be shorn and marked with his own mark; and yet, afterwards, the defendant contriving to disgrace the plaintiff, and knowing the said sheep to be the plaintiff's, falsely and fraudulently affirmed to the bailiff of the manor, that had waifs and strays belonging to it, that this sheep was an estray; whereupon, the bailiff seized it, to his damage, &c. And after verdict for plaintiff, Latch moved that there was no cause of action; for there is no breach of trust in the defendant, as shepherd; and his words cannot endamage the plaintiff; for he shall have his remedy against the bailiff of the manor that seized the sheep wrongfully. But it was adjudged that the action would lie; because the defendant, by his false practice, hath created a trouble, disgrace and damage to the plaintiff; and though the plaintiff have cause of action against the bailiff, yet this will not take off his action against the defendant in respect of the trouble and charge that he must undergo, in the recovery against the bailiff; and Hale said, that if one slander my title, whereby I am wrongfully disturbed in my possession, though I have remedy against the trespasser, I shall have an action against him that caused the disturbance."

The principles established by these different classes of cases are not to be reconciled. The cases of *Morris* v. *Langdale* and *Vicars* v. *Wilcocks*, seem to establish the principle, that no action lies for inducing a third person to violate his contract; for if the damage must be the legal consequence of the words spoken, no action will lie for procuring another to do an illegal act. And the reason assigned in those cases is, that the plaintiff has his remedy against the person violating his contract, or doing the illegal act.

The case of *Bird* v. *Randall*, decides that the party inducing another to violate his engagement, is responsible, in case the injured party has not already received satisfaction for the injury, from the party breaking his engagement.

The case of *Newman* v. *Zacharay*, holds the person causing the illegal act, responsible at all events.

I am inclined to follow the first two cases, as they were both actions for defamation, alleging special damage. The others were not; though they were all actions on the case sounding in tort. This court too, in *Butler* v. *Kent*, adopt the principle of *Vicars* v. *Wilcocks*, so far as to decide, " that in cases of *torts*, it is necessary to show that the particular damage in respect of which the plaintiff proceeds, must be the legal and natural consequence of the wrongful acts imputed to the defendant."

The principle established by these cases seems to be this : that every one who enters into a contract with another, looks to the responsibility of the contractor, to fulfil the contract, or pay the damages arising from a refusal to perform ; and that no action lies against a third person, who by slanderous words, not actionable in themselves, induces the contractor to violate his contract. If I am correct in this proposition, it necessarily follows, that no action lies against a person for inducing another by such means, to violate a marriage contract. Hence it results, that the declaration, in this case contains no cause of action ; and the judgment must be arrested.

But as I may be incorrect, in my notions on this point, I proceed to examine the other points in the case. And

first, I will inquire whether the plaintiff showed a cause of action by legal testimony; supposing the declaration to contain a good cause of action.

The first witness proves, that the defendant said he had at a certain time, prevented the marriage; but was apprehensive, the plaintiff and his son had then gone off to get married; and wanted to find his son, still to prevent the marriage. He then gave, as a reason, the girl's depravity, which he personally knew. By this witness, it appeared the defendant was alarmed for the fate of his son, who was still a minor. He said he had told his son of his own familiarity with the girl.

The second witness, Sloan, testified to a conversation with Parkman Baker; and was permitted to relate what P. B. had told him as to the declarations of the defendant. This was clearly irregular and improper; but if to be considered evidence, shows that Parkman did not believe what his father had told him about the plaintiff; and he was still determined to marry her.

The defendant proved by P. B. that he was not prevented from marrying the plaintiff by any thing the defendant had said; but because the plaintiff had confessed to him, that she had been intimate with other men.

Parkman Baker was then attacked and supported by witnesses as to his general character; and it appeared that he had related the story differently, to other persons, from what he had testified.

The defendant then offered to prove what had passed between P. B. and one Halsey Phelps, to show that he (P. B.) did not break his engagement, in consequence of what his father had said. This was overruled, and I think properly.

In my opinion, however, a new trial should be granted; as the judge admitted improper testimony; the declarations of Parkman Baker, before he was sworn as a witness. These were given in evidence to support the action; not to impeach the witness. The damages are certainly excessive; but courts do not lightly interfere on that ground in actions sounding in tort.

I am of opinion, therefore, that judgment should be arrested; and also that there is sufficient ground for a new trial.