Savage, Ch. J. (dissenting.)
Two motions are made in this case: 1. In arrest; 2. For a new trial.
To determine the first question we must examine the declaration, to ascertain whether it contains any cause of action. The first count states, that at and previous to the *358 speaking of the slanderous words, one Parkman Baker had pa¡¿ ftjs addresses to the plaintiff in the way of courtship, with a view of contracting matrimony with her ; that an engagement was formed, and a contract entered into, that they should he united by marriage. Yet the defendant, well knowing these facts, and with a view to prevent the marriage of the plaintiff with Parkman Baker, spoke the slanderous words in the declaration; charging the plaintiff with incontinence.
The second count is substantially like the first, varying the words.
The words spoken are not actionable in themselves, and it is only on account of the special damage, that the plaintiff can expect to recover.
It is contended, that as she has averred a contract of marriage with Parkman Baker, her remedy is on that contract ; that the injury complained of was the consequence, of an illegal act of a third person, for which the defendant is not answerable.
To support this position, we are referred to several cases, some of which I will briefly state.
In the case of Morris v. Langdale, (2 B. & P. 283,) the plaintiff being a dealer in stocks, the defendant said of him that he was a “ lame duck,” meaning that he had not ful filled his contracts in respect of the stocks or funds. The special damage alleged was, that he lost great gains which he would have acquired by the fulfilment of his contracts; and others refused to fulfil their contracts with him, or to have any further dealings with him. Lord Eldon, in giving the opinion of the court, says, “ a great part of the special damage consists in an allegation that other persons did not perform their contracts with him. Now, if the plaintiff has sustained any damage in consequence of the refusal of any persons to perform their lawful contracts with him, it is damage which may be compensated in actions brought by the plaintiff against those persons; and the law supposes that in such actions the plaintiff would receive a full indemnity.”
The case of Vicars v. Wilcocks, (8 East, 1,) was an action of slander showing special damage. On the trial, it ? -> *359 psared that the plaintiff was engaged for a year as a journeyman rope maker, by J. O.; and that in consequence of the words spoken by .the defendant, (viz. that the plaintiff had unlawfully cut some flocking cord of J. 0.) the plaintiff was discharged by his master before the expiration of the year. Lawrence, Justice, nonsuited the plaintiff, being of opinion that the discharge of the plaintiff by his master was not justified. It was of course wrongful, and he was answerable to the plaintiff. The supposed damage was the loss of those advantages which he was entitled to under his contract, which he could not be considered as having lost, as he had a right to claim them of his master. Upon a motion to set aside the nonsuit, Lord Ellenborough said, that “ the special damage must be the legal and natural consequence of the words spoken; otherwise it did not sustain the declaration ; and here it was an illegal consequence; a mere wrongful act of the master, for which the defendant was no more answerable than if, in consequence of the words, other persons had afterwards assembled and seized the plaintiff and thrown him into a horsepond by way of punishment for his supposed transgression.” This case seems to be recognized by this Court, in Butler v. Kent, (19 John. 228.)
Several cases are cited to show, that when the plaintiff has recovered for loss of marriage, no contract of marriage is stated, but merely a communication of marriage. Such is the report of Anne Davis’ case, (4 Rep. 17.) So also in Holwood v. Hopkins, (Cro. Eliz. 787,) though there the action did not lie, as the words were not spoken to the person who was in communication of marriage with the plaintiff, but to a third person; and so the damage was collateral; and no action would lie. (Williams v. Linford, 2 Leon, 111, contra, as to slander of title.) The same mode of stating the communication of the intended marriage is found in Cro. Jac. 162-3, and Cro. Car. 269.
On the other side, the case of Bird v. Randall, (3 Burr. 1346,) is relied on, to show that a person who seduces another to violate his contract, is liable; unless he who has violated his contract has made compensation. ■ In that case, Bird had covenanted with one Burford, by which *360 Burford was to serve as a journeyman five years; and bound himself in a penalty of £100. The defendant enticed Burford to violate his engagement; and on being sued for that cause, judgment was given for him, on the ground that, before the trial Burford had paid the penalty. Lord Mansfield seemed to take it for granted, that the defendant would have been liable, if the servant had not paid the penalty. Sir Fletcher Norton, Sol. Gen. in argument, cited the case of Newman v. Zacharay, (Aleyn, 3.) in which a case was put by Hale, of slander of title; where the person whose title is slandered shall have an action against him that caused the disturbance, though he has remedy against the trespasser. This last case is quoted by Bacon and Comyn, 1 Bac. Abr. 76, B.; 1 Com. Dig. 370, (C. 1.)
The case itself is as follows : “Newman sued Zacharay who was the plaintiff’s shepherd, in an action on the case; for that two of his (the plaintiff’s) sheep did estray, one of which being "found again, the defendant affirmed to be the plaintiff’s; whereupon, the plaintiff paid for the feeding of it, and caused it to be shorn and marked with his own mark; and yet, afterwards, the defendant contriving to disgrace the plaintiff, and knowing the said sheep to be the plaintiff’s, falsely and fraudulently affirmed to the bailiff of the manor, that had waifs and strays belonging to it, that this sheep was an estray; whereupon, the bailiff seized it, to his damage, <fec. And after verdict for plaintiff, Latch moved that there was no cause of action; for there is no breach of trust in the defendant, as shepherd; and his words cannot endamage the plaintiff; for he shall have his remedy against the bailiff of the manor that seized the sheep wrongfully. But it was adjudged that the action would lie; because the defendant, by his false practice, hath created a trouble, disgrace and damage to the plaintiff; and though the plaintiff have cause of action against the bailiff, yet this will not take off his action against the defendant in respect oí the trouble and charge that he must undergo, in the recovery against the'bailiff"; and Hale said, that if one slander my title, whereby I am wrongfully disturbed in my possession, though I have remedy against the trespasser, I shall have an action against him that caused the disturbance.”
*361 The principles established by these different classes of cases are not to be reconciled. The cases of Morris v. Langdale and Vicars v. Wilcocks, seem to establish the principle, that no action lies for inducing a third person to violate his contract; for if the damage must be the legal consequence of the words spoken, no action will lie for procuring another to do an illegal act. And the reason assigned in those cases is, that the plaintiff has his remedy against the person violating his contract, or doing the illegal act.
The case of Bird v. Randall, decides that the party inducing another to violate his engagement, is responsible, hi case the injured party has not already received satisfaction for the injury, from the party breaking his engagement.
The case of Newman v. Zacharay, holds the person causing the illegal act, responsible at all events.
I am inclined to follow the first two cases, as they were both actions for defamation, alleging special damage. The others were not; though they were all actions on the case sounding in tort. This -court too, in Butler v. Kent, adopt the principle of Vicars v. Wilcocks, so far as to decide, “ that in cases of torts, it is necessary to show that the particular damage in respect of which the plaintiff proceeds, must be the legal and natural consequence of the wrongful acts imputed to the defendant.”
The principle established by these cases seems to be this: that every one who enters into a contract with another, looks to the responsibility of the contractor; to fulfil the contract, or pay the damages arising from a refusal to perform ; and that no action lies against a third person, who by slanderous words, not actionable in themselves, induces the contractor to violate his contract. If I am correct in this proposition, it necessarily follows, that no action lies against a person for inducing another by such means, to violate a marriage contract. Hence it results, that the declaration, in this case contains no cause of action; and the judgment must be arrested.
But as I may be incorrect, in my notions on this point, I proceed to examine the other points in the case. And *362 first, I will inquire whether the plaintiff showed a cause ot action by legal testimony; supposing the declaration to contain a good cause of action.
The first witness proves, that the defendant said he had at a certain time, prevented the marriage ; but was apprehensive, the plaintiff and his son had then gone off to get married; and wanted to find his son, still to prevent the marriage. He then gave, as a reason, the girl’s depravity, which he personally knew. By this witness, it appeared the defendant was alarmed for the fate of his son, who was still a minor. He said he had told his son of his own familiarity with the girl.
The second witness, Sloan, testified to a conversation with Parkman Baker; and was permitted to relate what P. B. had told him as to the declarations of the defendant. This was clearly irregular and improper; but if to be considered evidence, shows that Parkman did not believe what his father had told him about the plaintiff; and he was still determined to marry her.
The defendant proved by P. B. that he was not prevented from marrying the plaintiff by any thing the defendant had said ; but because the plaintiff had confessed to him, that she had been intimate with other men.
Parkman Baker was then attacked and supported by witnesses as to his general character; and it appeared that he had related the story differently, to other persons, from what he had testified.
The defendant then offered to prove what had passed between P. B. and one Halsey Phelps, to show that he (P. B.) did not break his engagement, in consequence of what his father had said. This was overruled, and I think properly.
In my opinion, however, a new trial should be granted; as the judge admitted improper testimony; the declarations of Parkman Baker, before he was sworn as a witness. These were given in evidence to support the action ; not to impeach the witness. The damages are certainly excessive ; but courts do not lightly interfere on that ground v* actions sounding in tort.
*363 I am of opinion, therefore, that judgment should be airested; and also that there is sufficient ground for a new trial.
Motions denied,