O. B. FARRELLY & Co. v. THE CITY OF CINCINNATI.

(No. 9,280.)

1. In an action to recover damages caused by a public nuisance, the petition must contain a statement of the special damages complained of.

2. If one, having access to other routes, voluntarily uses a foundrous way, he can not recover for a loss thereby incurred.

3. A traveler who is forced to abandon his nearest route, by reason of the non-repair of the street, and seeks his destination by a longer and more circuitous road, whereby he suffers injury in his business, does not sustain

such a special damage as to entitle him to an action against the party charged with the duty of keeping the way in repair.

4. So also in case of an omnibus line which has lost custom by reason of being unable to pursue its customary route in consequence of the foundrous condition of a street.

5. In these cases, the damages are not the immediate consequences of the wrong, but are remote. The street being intended primarily for travel, not trade, the recovery, if any is permitted, must be limited to the injury sustained in the use for travel, viz: the mere delay and loss of time, and can not include a loss of the profits of trade.

6. But this is not the subject of an action in Ohio, because it is not special damage, but the ordinary inconvenience and loss sustained by the public at large, and only to be redressed by a public prosecution.

SEMBLE, that the owners of shops fronting directly on a foundrous highway may recover for loss of custom occasioned thereby.

GENERAL TERM.—Proceeding in error to obtain the reversal of a judgment rendered in favor of the defendant in error by Judge Gholson at special term. The action was for special damage, caused by a public nuisance. The petition states that plaintiffs are owners of a line of omnibuses plying between the corner of Main and Fourth streets, Cincinnati, and Corryville, by way of Vine street, making trips every half hour in the day, and twice a day extending their route to Clifton. In this business, which they aver is of public benefit, and but for the nuisance complained of would be to them private profit, they employ four omnibuses and twenty-two horses. They also aver that as the owners of said line of omnibuses in and over the said route, they are duly licensed by said city, and have fully paid the taxes assessed for the same.

They further set out in the petition that Vine street is a public highway, with the duty of keeping which in repair the city is by law charged, but that this obligation has been wholly neglected for a long time past, so that on or about January, 1856, a part of the street, from Mulberry street to the north corporation line, became broken up and foundrous, full of deep holes and big stones, and only to be traveled by driving in the gutters. And the petition further avers that although the omnibuses, horses, harness, and equipments

O. B. Farrelly & Co. *v.* The City of Cincinnati.

used by the plaintiffs were sufficient, and the plaintiffs exercised proper diligence themselves and through skillful drivers in driving "over the said street while the same was in the condition aforesaid, yet by reason of the bad condition as aforesaid of said street, and of the defendant's neglect in that behalf, and without any fault on the part of the plaintiffs or their drivers, the said omnibuses of the plaintiffs while traveling over said road were greatly racked and broken, and the horses of plaintiffs while so traveling over said road were badly strained, crippled, injured, and many of them killed, and the plaintiffs have been put to great expense, loss, trouble, and vexation in repairing their said omnibuses, and curing their horses and replacing with others the omnibuses and horses so injured and destroyed by reason of the bad condition of the said street and the neglect of defendant in that behalf. And the plaintiffs further allege that at various times since the said time last above mentioned, the plaintiffs have been compelled in bad weather by said disgraceful condition of said road to abandon a part of their said route, and to drive their omnibuses in and out of the city by other routes, and that plaintiffs by reason of the premises, lost a great deal of the good will and custom of those who had previously traveled in and out of the city regularly in their said line of omnibuses." The petition concludes with an averment that the city has been often since January, 1856, requested to repair said street.

To this petition the city demurred for want of a statement of facts sufficient to constitute a cause of action. The demurrer was sustained, and the petition dismissed, and it is to reverse the alleged error in this action of the court that the petition in error is prosecuted.

*King & Thompson,* and *W. M. Corry,* for plaintiffs in error.

*Hayes & Disney,* for defendant in error.

O. B. Farrelly & Co. *v.* The City of Cincinnati.

HOADLY, J., delivered the opinion of the court:

In ordinary actions under the Code, no specific statement of the damages sustained by the plaintiff is necessary. The statement of facts constituting the cause of action (Code, sec. 85) is not generally required to embrace the details of damages. But in actions for losses sustained by public nuisances, the rule is different. For here the gist of the action lies in the fact that the plaintiff has sustained special damage, different in kind from that common to the public. *Lansing* v. *Smith*, 8 Cowen, 153; *Squire* v. *Gould*, 14 Wend. 159. Unless such damage is shown, there is no " cause of action," and its existence is one of the "facts constituting the cause of action." And without a sufficient statement of such damage, a demurrer is well taken to a petition in such action.

About the general rule in such cases, there is no difficulty. The plaintiff to recover must show a loss different in *kind* from the rest of the community. Merely enhanced suffering of the same kind will not answer; and the loss of the public here consists in the inconvenience in, or obstruction to the use of the highway by travelers, differing in degree, not in kind, according to the frequency of use which proximity of residence, or estate, or peculiarity of occupation may impose. And for this no individual can sue, but must resort to such public remedies as are given by law. As already stated, the right to maintain a private action depends on the existence of special damage.

In looking to see if such damage is stated, we find two particulars charged. The first consists in losses sustained while in the continuing use of the street when foundrous; the other in the necessity of abandoning part of the route, and seeking the terminus of the trips by other streets. Let us consider these separately.

Without doubt the breaking of carriages and killing of horses *may be* special damage. But as they are not necessarily such, omnibuses will wear out and break down with ordinary wear and tear in time, and horses in like manner

will die in ordinary omnibus service. And if these are the results of the *continued use* of a foundrous highway, it is difficult to find any principle upon which they can be considered different in *kind* from the loss every traveler with a vehicle over the same road sustains. It is still ordinary wear and tear, the ordinary wear and tear of very bad work, of travel over a very bad road, and just such wear and tear as every vehicle which uses the street is subjected to. Again, if the cause of action arose out of the breaking of one or more omnibuses, or the killing of one or more horses in a foundrous highway by driving into a hole or over a pile of stones, whose existence was before unknown, and which could not with ordinary diligence be avoided, no doubt there would be a right to recover. But where this very same damage results, as here, from the *continued* use of a foundrous highway, it is obvious that unless it is the only road which could be resorted to and the use of it is necessary, every trip after its foundrous condition is discovered is voluntary, and every item of damage sustained after that time *voluntarily* incurred, and not the subject of an action such as this.

The rule is well stated in *Farnum* v. *Concord*, 2 New Hamp. 394. The court there say: " Suppose a bridge across a stream in a town so out of repair and ruinous as to be manifestly and clearly unsafe to pass, any person coming to such bridge with his horse, carriage, or team, might with great propriety decline to pass it, and if he sustained any special damage by reason of his being unable to pass it, he might well obtain an action against the town. But if in such case, knowing the situation of the bridge, he should attempt to pass with his horse or team, and they should be lost or injured, he could maintain no action against the town, because the loss must be attributed to his own fault and folly in attempting to pass such a bridge." And again they say: " If towns suffer highways to be out of repair, they may be compelled by law to repair them; but no neglect of towns to repair roads gives any right to individuals to make dangerous experiments upon them at the risk of towns."

O. B. Farrelly & Co. *v.* The City of Cincinnati.

To the same effect also is *Mount Vernon* v. *Dusouchett et al.*, 2 Carter, Ind. 586; *Erie City* v. *Schwingle*, 22 Penn. 384, may perhaps be cited as against this view, but it is not. There a bridge had been carried away, which the city was bound to sustain, and a ford was attempted in its place. The city undertook to repair the road leading to the ford, and by the bad condition of this road, the plaintiff was injured. He knew that the bridge was gone, and there were other streets with bridges, which he could have traveled, but it was not shown that he knew the road to the creek was out of order, and he was injured, not by the want of the bridge, but the non-repair of the road, and this very road the city had tried or assumed to put in order for travel.

It must be remembered that though the plaintiffs state that they were licensed to use this route, they do not sue for the breach of any contract, express or implied, but only for the breach of the general public duty to keep the streets of the city in fit condition for use. And if they have, by reason of their license, a right to use Vine street while it is out of repair, they must assert it in the proper action; an action upon the contract, if there be one. The fact that they continued voluntarily to use the street after it ceased to be fit for use, might not perhaps there avail as a defense. But where they rely on the public duty, and not on a private right, it is a sufficient answer to say, you could have used other routes to your terminus; you persisted in this, knowing its condition, and voluntarily incurred this loss.

For one of the elements of that special damage which justifies a recovery in this class of cases is that the plaintiff did not contribute to its existence. The public nuisance must be the proximate cause of the injury. Here it is the remote cause. The voluntary use of the highway by the plaintiffs is the proximate cause.

Nor can it be said that Vine street was the only avenue by which Corryville could be reached from the city. The petition itself shows that other routes could be and were used for that purpose. So far, then, as the injury to the

horses and carriages of the plaintiffs is concerned, it might have been avoided, and can not be recovered.

We come next to consider the claim of damages founded on the abandonment of the streets and the resort to other routes. In examining this part of the case, it must be borne in mind that the plaintiffs do not sue upon any contract growing out of their license. They rely on the breach of a public duty, and the case, in this respect, presents the single question: Can it be alleged as special damage by those who have been using a public highway with coaches for the transportation of passengers, that a nuisance exists by which they are forced to abandon and seek the termini of their route by other steets, and that thereby they have suffered in their trade?

The consideration of this question calls for an examination of authorities. The earliest case is to be found in the Year Book 27, Henry VIII., page 27, where the judges disagreed. The plaintiff declared he used to have a way from his house to his close by the highway, which the defendant stopped, so that the plaintiff could not go into that part of his close. Baldwin, C. J., held that there was no special damage shown. On the other hand, Fitzherbert, J., argued to the contrary, because the plaintiff had no other way to his close. It is obvious that if he had another way, and the only injury had been a necessary circuity of travel, both judges would have agreed that no action lay. In *Iveson* v. *Moore* (as reported in 1 Lord Raym, 486), Lord Holt says that "Baldwin's opinion has been held law ever since."

In *Fineux* v. *Hovenden*, Croke Eliz. 664, there was also a disagreement of judges. The plaintiff alleged a public way in the city of Canterbury, from St. Peters street to Rush-market street, which the defendant had obstructed with a ditch and pale cross, whereby the plaintiff lost his passage. It was considered by Popham, C. J., Gawdy and Fenner, J. J., that the offense is punishable in the leet, and without a special grief the action lies not. But Clench, J.,

thought the stopping of itself a special prejudice to the plaintiff.

In Williams' case, 5 Coke, 72, it was held that no action would lie in favor of a parishioner against a vicar for refusing to celebrate divine service and administer the sacrament, because the chapel was not private to the plaintiff and his family, but common to all the tenants of the manor.

And the same principle was applied by the supreme court of New York to a very different class of cases in *Butler* v. *Kent et al.*, 19 Johns. 223, where a vender of lottery tickets sued the managers of the lottery for so improperly conducting the drawing as to destroy public confidence in its fairness, whereby his business was injured and his profits lessened. The injury, says Spencer, C. J., is common to all who have tickets in that particular lottery, and not special to the plaintiff, and in such a case "it appertains to the public only to avenge the injury."

In *Hart* v. *Bassett*, Sir Thos. Jones, 156, the plaintiff farmed the tithes of a certain parish for a year, and was possessed of a certain barn in which he intended to lay them; the direct way was obstructed by the defendant with a ditch and gate, by reason of which obstruction the plaintiff was forced to carry the tithes in a roundabout and more difficult way. This was held sufficient, that the additional labor of the plaintiff's servants and cattle was a particular damage.

This case which, at first view, seems directly in point, as to the right to recover for whatever delays have been occasioned to the plaintiffs, is much shaken by the criticism of Lord Holt, C. J., in *Iveson* v. *Moore*, 12 Modern, 268. He says: "The case of *Hart* v. *Bassett* is a weak case, but still the declaration there was better than this; for it appears that the plaintiff was a farmer of tithes and was liable to an action if he suffered the tithes to lie on the land beyond a convenient time, and that he was also put to great expense," and in the report of the same case in Lord Raym. 494, he is said to have added, "but if there was no more than the

bare going roundabout, it is a hard case." And in the same case, Rokeby, J., uses this disparaging language, "and, *suppose* the case of *Hart* v. *Bassett* to be law, it is not like this."

There are American cases which rest upon the principle that Lord Holt puts *Hart* v. *Bassett* on. Thus, it has been held in New Hampshire and Indiana that the duty imposed upon public bodies to keep highways in repair will furnish sufficient ground for an action where they have been put to expense in discharging it, as where they have had to bridge a canal or railroad. *Troy* v. *Cheshire R. R. Co.*, 3 Foster, 83; *Commissioners of Franklin Co.* v. *Whitewater Valley Canal Co. et al.*, 2 Carter, Ind. 162. So it is said that a government contractor, who has to furnish military stores at a given time, if impeded by a public nuisance, and put to extra trouble and expense to complete his contract, may recover from the wrongdoer. This is an illustration of the true rule of *Hart* v. *Bassett,* given by the Supreme Court of New York in *Lansing* v. *Smith*, 8 Cowen, 146, and the reason of the rule in all these cases is that the injury could not be avoided, but had to be met.

In *Maynell* v. *Saltmarsh*, 1 Keble, 847, an allegation that the plaintiff's corn was corrupted and spoiled in consequence of posts set in a highway which prevented his removing it, was held a sufficient statement of special damage.

*Pain* v. *Patrick et al.*, 3 Modern, 289; Carthew, 191; 1 Salk. 12; was a case of neglect in keeping up a public ferry. There was a judgment for the defendant, because no special damage was shown. In the report in Modern, 294, the court say: " By the plaintiff's own showing, it is a common passage, which is no more than a common highway; now for disturbing him in such a passage, no action on the case will lie, unless he had alleged some particular damage done to himself." * * * "If toll had been extorted from him, then an action on the case had been the proper remedy." The pleadings, as shown by the report in Salkeld, state that plaintiff requested passage, which was refused. " There-

fore," says the court, "the plaintiff could not maintain an action for not passing, for so any subject might bring an action, which would be endless."

*Iveson* v. *Moore* was a case much considered and reported. It may be found in 12 Modern, 262; 1 Lord Raym. 486; Carthew, 451; 1 Salkeld, 15; Comyns, 58; Comberbach, 480; Holt, 10.

The plaintiff had a colliery near a highway, which the defendant obstructed, *per quod* the plaintiff lost the profit. and the benefit of his colliery, and the coals lying on the ground were much damnified. There was a verdict of the plaintiff, and the case came before the King's Bench on a motion in arrest of judgment. The judges divided in opinion, Gould and Turton, J. J., holding the declaration good enough especially after verdict. Gould, J., *inter alias*, says: "Indeed, if the plaintiff had only said '*per quod* his carriage could not pass that way,' that had been bad; because that is a common damage with the rest of the king's subjects, and at that rate, every one that had occasion to pass that way would have his action, which would beget such a multiplicity of actions as the law will not endure; but here he says, '*per quod* he lost the sale of his colliery,' and that is special." And he argued that it was not necessary to instance who the buyers were. On the other hand, Lord, C. J., and Rokeby, J., held the declaration insufficient, for want of a proper statement of special damage. Lord Holt says: "The special damage must be more than hindrance of passages; as falling in, breaking hand or leg, etc., and I always understood it so. It is objected that he lost his customers, and that is particular. I answer, such a precedent overthrows all the books, which agree that damage must be specially alleged, for the damages must support the action, and therefore they must show some particular customer whom this stopping hindered to come." And Rokeby objected "because of the multiplicity of actions that would ensue if every one might have an action that is stopped of this way," and also said, *inter alias*, "it may be the customers would not have

come if the way had not been stopped; or if they had come, it may be he had not agreed of the price with them." This case was argued on error in the Exchequer Chamber before the Justices of Common Pleas and Barons of the Exchequer, who all were of opinion for the plaintiff, but their decision is not reported.

It appears, however, from a note of Mr. Durnford to the case of *Chinchester* v. *Lethbridge*, Willes, 74, that the principal reason why the views of Lord Holt were not approved in the Exchequer Chamber was, because the only way to come at the plaintiff's colliery from one part of the country was through the obstructed way, hence it must be intended, without any *allegation* of loss of customers, that the plaintiff suffered particularly in respect of his trade.

*Baker* v. *Moon* is a case cited in the opinion of Gould, J., in the report of *Iveson* v. *Moore*, by Lord Raymond. There the plaintiff's tenants were said to have left his houses, in consequence of an obstruction in the highway, and thereby he claimed that he lost the profits of the houses. It was objected for the defendant that the damage was not special enough, but the court was of a different opinion.

*Chinchester* v. *Lethbridge*, Willes, 73, was an action on the case for obstructing the public way. The court sustained a verdict for the plaintiff upon two grounds. *First,* the plaintiff several times attempted to travel the road with his coach, but could not by reason of the obstruction. *Secondly,* the defendant in person withstood the plaintiff and opposed him, and prevented his removing the obstruction.

*Hubert* v. *Groves* 1 Esp. 148. The plaintiff was a coal and timber merchant, and entitled to the use of Dean street, a public highway, which was totally obstructed by the defendant by which the plaintiff was prevented from enjoying his premises and carrying on his trade in so advantageous a manner as he had a right to do, and by which he was obliged to carry coals, timber, etc., by a circuitous and inconvenient way. Lord Kenyon non-suited the plaintiff, and on motion for a new trial, the whole court approved his ruling.

A similar case is that of *Wiggins* v. *Boddington,* 3 Carr. and Payne, 544, where a recovery was permitted to the extent of the delays occasioned by the slow and careless management of a swing bridge across a navigable stream. *Rose et al.* v. *Miles,* 4 Maule & Sel. 101, the plaintiff, with loaded barges, was navigating a public navigable creek, and defendants so moored a barge across as to obstruct the passage, whereby he was compelled, at great expense, to make a portage of his goods around the obstacle. Held that the plaintiff was entitled to recover. Lord Ellenborough, *inter alias,* says: " In *Hubert* v. *Groves,* the damage might be said to be common to all. * * * If a man's time or his money are of any value, it seems to me that this plaintiff has shown a particular damage." Bayley, J., said: " The defendants, in effect, have locked up the plaintiff's craft while navigating the creek, and placed him in a situation that he must unavoidably incur expense in order to convey his goods another way."

*Greasly* v. *Codling et al.,* 2 Bing. 263, is often cited as if it were an action for damages occasioned by a public nuisance, but though the injury complained of was the obstruction of a highway, it seems to have been rather a stopping of the plaintiff personally than of the public generally. The plaintiff was a retail coal higgler, who was traveling the highway with four loaded asses. The defendant shut a gate across the highway and prevented his passage, forcing him to take a circuitous route, and lose four hours time. Best, C. J., in granting a new trial—there having been a verdict for the defendant—says: " The question, therefore, is whether a man, traveling along the high road, can maintain an action (not if he is stopped by the road being casually out of repair, but) if he is stopped by the hand of the defendant," etc. * * * " It has been contended that he can not, unless he proves a special damage; but even in a case of public nuisance, if any one has been distinguished in injury, he may sue the offender."

In *Henly* v. *The Mayor and Burgesses of Lyme,* 5 Bing.

91; 1 Bing. N. C., 222; the washing away of earth and destruction of cottages was held a sufficient specification of damage to warrant an action against. the defendants, for failing to comply with their public duty of keeping their sea walls in repair.

In *Wilkes* v. *The Hungerford Market Company*, 2 Bing. N. C. 281, the plaintiff, a bookseller, had a shop by the side of a public thoroughfare. The defendants were authorized to obstruct the way, but kept it closed an unreasonable time, whereby the plaintiff suffered an actual loss in the profits of his business, by the public access to his shop being prevented. The question was whether this constituted special damage as to warrant a recovery. Tindal, C. J., says: "The next question is whether this is such a peculiar and private damage to the plaintiff beyond that suffered by the rest of his majesty's subjects, as to enable him to sustain an action against the defendants. And I think in conformity with the greater number of the decisions that it was. The injury to the subjects in general is, that they can not walk in the same track as before, and for that cause alone, an action on the case would not lie; but the injury to the plaintiff is the loss of a trade which but for this obstruction to the general right of way he would have enjoyed; and the law has said from the Year Books downward, that if a party has sustained any peculiar injury, beyond that which affects the public at large, an action will lie for redress. Is the injury in the present case of that character or not? The plaintiff, in addition to a right of way which he enjoyed in common with others, had a shop on the road side, the business of which was supported by those who passed. All who passed had the right of way, but all had not shops; that is the observation made in *Baker* v. *Moon*." * * * "*Hubert* v. *Groves* has been relied on, on the part of the defendants; but the gravamen *there was one which applied equally to all his majesty's subjects, namely, that they were obliged to go in a more circuitous track, and not one which affected the plaintiff above others;* unless that be a sufficient distinction between *Hubert*

v. *Groves*, and the present case, I must yield to the greater authority of the other decisions." Mr. Justice Park concurred. He criticised *Hubert* v. *Groves* briefly, as a decision not entitled to the same weight as most of Lord Kenyon's, and he added what the report in Espinasse certainly does not warrant, that the motion for new trial did not appear to have been much discussed. The report tells us what cases were cited, but nothing more. It is a little remarkable that neither Mr. Justice Park nor Mr. Justice Bosanquet, although the latter in his concurring opinion quoted the *per quod* of the declaration in *Hubert* v. *Groves*, noticed the fact that no loss of profits was alleged in the case, but only an inconvenience and disadvantage to the plaintiff in carrying on his trade, viz : the forcing him to carry his coals and timber by a circuitous and inconvenient way. Hence, as the chief justice said, "the gravamen was one which applied equally to all his majesty's subjects, namely, that they were obliged to go in a more circuitous track." This is the more surprising because Justice Bosanquet, in speaking of *Baker* v. *Moore*, on the authority of which mainly he bases his judgment, says: " For the mere act of obstruction in passing and re-passing, the plaintiff could not probably have sued, nor could his tenants themselves, as mere occupiers; but the foundation of the action was, though it rested on an obstruction to passing and repassing, the injury occasioned to the plaintiff by the deterioration of his property."

A little close examination would have shown how different was the allegation in *Hubert* v. *Groves*, for there there was little else than the " mere act of distinction in passing and repassing," and the necessary inconveniences of going round. The two cases can well stand together, and to sustain *Wilkes* v. *Hungerford Market Co.*, it was not necessary to depreciate the authority of *Hubert* v *Groves*.

*Rose* v. *Groves*, 5 Mann. & Gr. 613, was held not to be a case of public nuisance, but the court said that even if it were, special damage was shown. The plaintiff kept an inn fronting on the Thames, and customers had been prevented

34

from getting access to his house by large beams placed in the river by the defendant. *Dobson et al.* v. *Blackmore,* 9 Ad. & E., N. S., 991, was a somewhat similar case. The questions were presented on the pleadings. The plaintiffs, in some of their counts, alleged possession of property on the Thames, the free passage by boats to and from which was obstructed by barges and planks placed in the river by defendant, by reason of which plaintiffs were put to the great trouble and expense in and about the conveyance of their servants, goods, and merchandise, and in and about endeavoring to remove said obstructions, and in conveying of their property and servants by an inconvenient and circuitous route. Here it will be noticed, as in *Rose* v. *Miles,* 4 M.& S. 101, expense is alleged to have been occasioned.

There is but a single other English decision of sufficient pertinence to call for notice. This is the case of *Spencer & Ward* v. *The London and Birmingham Railway Co.,* 8 Simons, 193, an application to enjoin the defendants from cutting away Granby street, which appears to have been the only avenue whereby the inhabitants of Granby Mews, a sort of island in the Thames could gain access to other parts of London, except " a *dangerous* and circuitous unpaved road, called Harrington street." The defendants were allowed, by their charter, to dig away Granby street, provided they passed their track under it, and built a substantial brick bridge in place of the highway. Spencer occupied a livery stable as the tenant of Ward in Granby Mews, and his business had been nearly ruined. Besides this, when the digging was commenced, one of his drivers, having no notice of the excavation, had driven in at night, and the carriage been overturned and considerably injured.

Vice Chancellor Sir Launcelot Shadwell says: " With respect to the nature of the grievance, all the inhabitants of Granby Mews, as it appears to me, suffer a species of injury quite distinct from that done to his majesty's subjects in general. If the excavation were much widened, it might prevent all ingress to and egress from Granby Mews by horses

and carriages; and individuals residing in the Mews might be wholly blocked up by narrowing the isthmus to an extent which would prevent their entrance into the wider world beyond them. This is an injury different from that done by these works to individuals in general." He also adds that "it is plain Spencer might have recovered for the injury he suffered, if he had brought an action," and granted the injunction desired.

The subject has been examined in many American cases. One of the earliest of these is *Hughes* v. *Heiser*, 1 Binney, 463. This was an action to recover damages for obstructing the Schuylkill with a dam, so that the plaintiff could not pass with his raft and reach a market with his timber. The jury had found for the plaintiff and the case reached the supreme court of Pennsylvania by writ of error. In giving the opinion of the court, Tilghman, C. J., regarding the cases of *Hart* v. *Bassett* and *Hubert* v. *Groves* as conflicting decisions, does not, however, find it necessary to express his views as to their relative weight, because, he says, the case before the court is "stronger than either. The plaintiff has averred that he had procured a large quantity of boards and timber and made them into rafts to bring down the river; that he seized the opportunity of a flood, and did come down as far as the obstruction, and was there stopped by the obstruction. It is certain that he must have suffered special damage, and the jury have found so; and if he has, it is immaterial whether it was immediate or consequential."

In *City of Pittsburg* v. *Scott*, 1 Penn. State, 309, the same court were again called to examine the subject. This was an action on the case for the obstruction of Duquesne Way. The controversy seems to have been of much importance, as bearing on the question of right, but the special damage shown was very trifling. Indeed, it can hardly be called by that name in any proper use of language, for all that was claimed was that by reason of two piles of lumber in the street, certain carts, owned by the city, and employed in her business, were compelled to deviate a few feet from a

right line. It is difficult to avoid the conclusion that the court were too anxious to reach the main point in the controversy, for if this is special damage, no case can be imagined where there is any actual inconvenience suffered, which is not. And what then becomes of the law's aversion to a multiplicity of suits, on which the whole doctrine is founded?

*Stetson* v. *Faxon*, 19 Pick. 147, was a case where, by the obstruction in a highway, a warehouse of the plaintiff was rendered less eligible, and he was obliged to reduce the rent.

Held, sufficient special damage to warrant an action.

It is to be noticed that the court seem to have regarded *Hubert* v. *Groves* as "greatly shaken, if not overruled" by *Wilkes* v. *Hungerford Market Co.*

*Proprietors of Quincy Canal* v. *Newcomb*, 7 Met. 283. This was an action for tolls. The defense was that the canal was not of the proper depth, so that defendant could not use it with a boat of nine feet draught, as required by the charter. Shaw, C. J., in pronouncing judgment, says: "If the defendant suffered damage from the filling up of the canal, and want of cleansing, by means of which he was unable to enter with a vessel of nine feet draught, it would have been a damage suffered in common with all other members of the community, and therefore redress must be sought by a public prosecution. Where one suffers in common with all the public, although from his proximity to the obstructed way, or otherwise from his more frequent occasion to use it, he may suffer in a greater degree than others, still he can not have an action, because it would cause such a multiplicity of suits as to be itself an intolerable evil."

*Holman* v. *Inhabitants of Townsend*, 13 Met. 297. In this case it was averred that the town being bound by statute to keep all highways in repair, allowed a certain road, whereby the plaintiff had access to a certain saw-mill, to remain so obstructed with snow and ice, so that he was hindered and impeded in traveling with his horses, cattle and teams, and on foot, and prevented from hauling and sledding his timber

to said mill, that it might be sawed into lumber. A demurrer was sustained, and an appeal. Shaw, C. J., says: "That damage which a party sustains, in consequence of not being able to use a highway, is one which he sustains in common with all the rest of the community, from the failure of the town to perform a public duty, and can be properly redressed only by a public prosecution. Were it otherwise, every individual in the town who owns a team or carriage, and would occasionally find it convenient to use the road, would have a separate action."

*Smith* v. *The City of Boston*, 7 Cush. 254. Part of Market street in Boston had been occupied by the Boston and Maine Extension railroad, and discontinued as a highway, whereby, as plaintiff claimed, the value of several parcels of his land on other streets in the immediate vicinity, and accessible by other streets, was diminished and rent lost. Chief Justice Shaw, after remarking upon the difficulty of laying down a general rule, adds: " One limit, however, must be observed, which is, that the damage for which a recompense is sought, must be the direct and immediate consequence of the act complained of, and that remote and contingent damages are not recoverable. The inconvenience of the petitioner is experienced by him in common with all the rest of the members of the community. He may feel it more in consequence of the proximity of his lots and buildings, still it is a damage of like kind, and not in its nature peculiar or specific." * * ".The petitioner has free access to all his lots by public streets. The burden of his complaint, therefore, is, that in going to some of his houses in some directions, he may be obliged to go somewhat further than he otherwise would. So must the inhabitants of the south end of the city, or the citizens of other towns, with their teams or carriages, who would have had a right to use the discontinued way."

In Maryland where the depth of water at a private wharf was decreased, the wharf rendered less eligible, and wharfage lost by the act of the city of Baltimore, and diverting certain streams of water from their natural channel to a

point near the wharf, so as to cause a deposit of sand and fill up the navigable water, it was held that the city was liable.    *Baron et al.* v. *Mayor, etc., of Baltimore,* 2 Am. Jur. 203, cited in *Stetson* v. *Faxon,* 19 Pick. 147.

A somewhat similar case was presented to the supreme court of New York in *Lansing* v. *Smith et al.,* 8 Cow. 146. The plaintiff owned a wharf on the Hudson river at Albany.    The defendants were public officers, authorized to construct a basin in the river at the terminus of the Erie and Champlain canal.    It was said that in so doing they made a pier and bridge in such a way as wholly to preclude the access of vessels with masts to the plaintiff's wharf, and to deprive him of the use of it to as great advantage as he had before had, and of the gains of letting it, and also of its sale.    The court held that no special damage so as to warrant an action was shown.    The opinion by Mr. Justice Sutherland contains an elaborate review of the authorities, from which it seems that the court relied upon *Hubert* v. *Groves,* and approved the opinion of Lord Holt in *Iveson* v. *Moore,* disapproving of *Hart* v. *Bassett* and *Chinchester* v. *Lethbridge.*    This decision was affirmed in 4. Wend. 9.    It is somewhat remarkable that the opinion in this case takes no notice of the case of *Pierce* v. *Dart,* 7 Cowen, 609, in which the same court had treated *Hubert* v. *Groves,* as overruled by *Rose* v. *Miles,* and had directly decided that the injury to the public in the case of an obstructed highway is merely theoretical and resting in presumption of law, and that every person who is actually obstructed may sustain an action, however trifling the damage.    They accordingly applied the rule to a case where a fence was built across the highway, which the plaintiff tore down four times, although by their own statement, the value of his time and trouble in so doing did not exceed twenty-five cents.

In *Lansing* v. *Wiswall,* 5 Denio, 218, Beardsley, C. J., overlooking what was said in *Lansing* v. *Smith,* remarks that "*Hubert* v. *Groves* is not regarded as authority either in England or in this State," and cites *Pierce* v. *Dart.*

O. B. Farrelly & Co. *v.* The City of Cincinnati.

The rule established in *Lansing* v. *Smith* was applied by the superior court of New York city in *Dougherty* v. *Bunting*, 1 Sandford S. C. 1, to a case where the use of a public wharf was obstructed by piles of wood, so that vessels were prevented from unloading there, and neighboring warehouses depreciated in value.

In *Fletcher* v. *The Auburn and Syracuse R. R. Co.*, 25 Wend. 462, the defendant had made an embankment several feet high across a highway, and thus flooded the plaintiff's cellar and injured his cellar wall. Held that an action could be sustained.

The question has been much considered in Connecticut. The first case upon the subject decided in this country was *Burrows* v. *Pixley*, 1 Root, 362. This was an action on the case for injuries resulting from a dam thrown across a navigable river, whereby the plaintiff who owned a store, farm, and ship-yard above was cut off from navigation to the sea. It was averred that this was "to the nuisance and great detriment of the plaintiff in his trade, navigation, and husbandry." This was held a sufficient statement of particular injury.

There are later cases in Connecticut which, at first view, seem inconsistent with this. Perhaps, however, they can be reconciled by recurring to the ground on which *Iveson* v. *Moore* was ultimately decided, viz: that the plaintiff was engaged in lawful trade, and that the river was his *only* practicable way, the obstruction to which must be taken to have caused actual loss of profits. This view seems to have distinguished the injuries in *Rose* v. *Miles*, *Spencer* v. *London and Birmingham Railway*, *Hughes* v. *Heiser*, and to have been recognized in the Year Book, as forming a sufficient distinction from public injury; for the loss is thus limited to a comparatively small class, who can not by any circuity of movement evade it. A somewhat similar argument might be used to sustain the right to recover the loss of profits of a store, or loss of rents where the business is fixed in locality. It is not the trouble and delay of avoiding a nuisance, for which the action is given, but here there is none; the

party in such case can not avoid, but must suffer the contact. The injury, therefore, is the direct result of the wrong, and one which the wrongdoer may be said to have in contemplation. The loss, though consequential, is the immediate effect of the nuisance, not remote.

The cases to which we refer are *O'Brien* v. *Norwich and Worcester R. R. Co.*, 17 Conn. 372; *Seeley* v. *Bishop*, 19 Ib. 135, and *Wright* v. *Wright*, 21 Ib. 329.

. In the first, the court denied the plaintiff's application for an injunction to restrain the defendants from obstructing with the railroad the navigation of a cove or arm of the sea on which he resided, and which he was accustomed to navigate.

In the second, they denied that a right of action existed in favor of a party whose customary access from his house to other land owned by him by the waters of a navigable creek had been destroyed by a dam erected by the defendant.

The case in 21 Conn. recognizes the same principle, as does also the case of *Law* v. *Knowlton*, 26 Maine, 128. But in *Frink* v. *Lawrence*, 20 Conn. 117, an injunction was granted to restrain the building of a pier which would cut off all access to a valuable wharf of the plaintiff. This result seems to recognize the distinction we have just suggested, though there is a difference between the travelers and of owners of real estate as to what constitutes their immediate loss, which will also sustain this case, and as to which we have more to say hereafter.

*Barr et al.* v. *Stevens, etc.*, 1 Bibb, 292. " If a man," says Judge Trimble, " fell 'trees in the highway, whereby it is stopped up to the annoyance of the passengers, it is a nuisance common to all, a public nuisance, for which at the common law he might be prosecuted by the commonwealth and punished; but a suit against him could not be maintained by a private individual who had only sustained the injury common to all, of being turned out of the way; but, if in attempting to ride over the trees felled in the road, an

individual's horse should be thrown, whereby either himself or his horse is wounded, he can maintain an action for this special damage. The reason why he can not without special damage, maintain an action against the wrongdoer is, that if one could sue, all might, which would be ruinous."

*Baxter* v. *Winooski Turnpike Co.*, 22 Vermont, 114, was an action on the case for damages growing out of the foundrous condition of the defendant's road. The plaintiff was a farmer residing on the road, and alleged that he sustained damage in not being able to travel it as expeditiously and carry as large loads as he might otherwise have done, and in not attempting to travel it at particular times because of its general badness and insufficiency. Held that no action lay, that the damages stated might warrant a recovery. The subject has been also considered in *Baltimore* v. *Marriott*, 9 Md. 160; *Runyon* v. *Bordine*, 2 Green, 472; *City of Tallahasse* v. *Fortune*, 3 Florida, 19; *Martin et al.* v. *Bliss*, 5 Black. 35; *City of Providence* v. *Clapp*, 17 How 161; *Elliot* v. *Concord*, 7 Foster, 204; *McLauchlin* v. *Charlotte & S. Ca. R. R. Co.*, 5 Rich. 583; *Rochester White Lead Co.* v. *City of Rochester*, 3 Comst. 463; *Lloyd* v. *Mayor, etc., of New York*, 1 Selden, 369. It has been decided in our own State that consequential damages may be recovered in such cases. *Little Miami R. R. Co.* v. *Naylor*, 2 Ohio St. 235. This was a case of damage to trade and property adjacent to the line of a railroad illegally located.

This long list of cases shows the difficulty which sometimes arises in applying very simple rules to the varied concerns of life. The easiest and best mode of reconciling them is to endeavor to return to first principles.

It is now well settled that the fact that the damages are not direct but consequential is not always an obstacle to a recovery. Originally this was much controverted in England. But though for such damages compensation may be given, they must be near and not remote consequences. It is not every indirect more than every direct injury which is the foundation of an action.

But it has been claimed that every direct injury will warrant an action, and to that extent the cases of *Pierce* v. *Dart,* and *Pittsburg* v. *Scott* go. The theory upon which they are founded is that the public injury is only the breach of the theoretical public right to have always kept open, which lies only in imagination and contemplation, and that any interference, no matter how small with any individual's actual enjoyment of the highway is not a public but a private injury.

But this is limiting the public injury far too closely. Law does not concern itself with abstract rights, except in their relations to the actual affairs of men. *Damnum absque injuria* is a phase as old as the common law, and is a sufficient answer to any claim. This is well shown by the laws of our own State, which punish the obstructer of a highway. It is not merely the fact of obstruction which renders him liable, nor the violation of the abstract right for which he is held, but the law requires the concrete to be shown also. The obstruction must be proved to be to the " hindrance or in'-convenience of persons making use of the highway." Swan's Stat. 815.

The loss to the community is not merely in the abstract, but it includes that ordinary inconvenience, which every man who is brought in contact with the nuisance must suffer. Those only are supposed to have received private injury who are distinguished in suffering.

To hold otherwise, is to overlook the foundation of the whole doctrine, viz : the necessity of preventing multiplicity of suits. For this is itself, as Chief Justice says, " an intolerable evil," or, in Judge Trimble's phrase, it would be "ruinous." The rule, like the Statute of Limitations, is a measure of repose. Lord Coke states no other reason for it. These are his own words (Co. Litt. 56 a): " But here is to be observed a diversity between a private way, whereof Littleton here speaketh, and a common way. For if the way be a common way, if any man be disturbed to go that way, or if a ditch be made over athwart the way, so as he can not

go, yet he shall not have an action upon his case; *and this the law provided for* avoiding *of multiplicity of suits,* for if any one man might have an action, all men might have the like."

Now, this seems to be precisely the case at bar in the aspect we are now considering. A ditch has not been made "overthwart the way," but what amounts to the same thing, the way has become foundrous, "so as the plaintiff can not go." Lord Coke's conclusion is, "he shall not have an action upon his case; and this the law provides for avoiding of multiplicity of suit."

For if the plaintiffs may recover, no one whose business calls him upon Vine street can be denied an action. The individual who has need to use the street but once may suffer; it is true, much less than the plaintiffs, but the difference is only in degree; and a large number of citizens must, and he may suffer more.

For it will be remembered that the business of an omnibus plying between a city and its suburbs is mainly at the terminus and places near them. The custom derived from the residents of any particular square or streets of the line is comparatively small, and when the carriages are diverted from their usual route, a short walk will bring a passenger to them. On the other hand, there are numerous occupations which find permanent custom from house to house, through the streets of a city. Thus the argument in favor of the right of the plaintiffs to sue, applies with far greater force to every owner of a milk, ice, or beer wagon, to bakers, and dealers in coal and charcoal. These have the regular customers in which daily supply they find profit.

Another large class of citizens, who might sue with as much propriety as the plaintiffs, are the owners of drays and express wagons employed in the neighborhood of a street which may be allowed to become foundrous. If obliged to take a circuitous route, they are as much (in kind, perhaps, not always to the same extent) impeded and inconvenienced in the lawful prosecution of their business as the plaintiffs. Indeed, cases can easily be conceived where a far greater

injury would ensue.    As if a square in the business portion of a city should become impassable.

The right to recover for such ordinary delay and inconvenience as every traveler upon the road is put to, in consequence of the nuisance, does not, in our judgment, exist on behalf of an individual.    But if it did, the plaintiffs are not necessarily entitled to judgment in the case, for in the part of the case we are now examining, they aver no other loss than of custom.    They say they were forced to abandon their custom-route, and seek their termini by *other*—they do not say by *longer* routes.

If *Pierce* v. *Dart*, and *Pittsburg* v. *Scott*, be law, it does not follow that in such cases there can be a recovery beyond the proximate consequence of the nuisance.    In both these cases the courts deciding them, treat the damages as limited to the value of the immediate outlay of time and labor.    So in *Hart* v. *Bassett*, the additional labor of the servants and cattle of the plaintiff, in going a longer and more circuitous route, was treated as the measure of damages.

In a case of nuisance, *City of Dayton* v. *Pease*, 4 Ohio St. 100, the court say, " the damages to be recovered against the corporation must be the immediate, natural, and necessary result of the negligence or want of skill complained of."

In a somewhat similar case, *Platt Evans* v. *The City of Cincinnati*, 5 Ohio St. 603, the rule is stated in these terms.    The recovery, say the court, is limited in the absence of fraud or malice " to the natural and proximate consequences of the illegal act.    These, it is fairly presumed, the party committing the injury, in good faith, or under a claim of right, may foresee, and expects to compensate, should he be found in the wrong.    But the principle necessarily excludes all those consequences of the act which are remote and indirect, and all investigation of losses which are purely speculative."    And such was held to be the character of the loss of the profits of trade, while the plaintiff's store was closed in consequence of the city's having, without right, and with a

strong hand, taken possession and cut off the front of his store for the purpose of widening a street.

Upon the same principle, the supreme court of Vermont, in *Baxter* v. *Winooski Turnpike Co.*, refused to allow damages resulting from the plaintiffs not using the road at all, on account of its bad condition, for they were purely hypothetical.

Whether the loss of profits is a proximate or remote consequence of a public nuisance, depends upon circumstances. Where a trade is carried on in a fixed locality, he who establishes or permits a nuisance in the neighborhood, may be held to have contemplated this species of injury, and it is, perhaps, no more than right that he should answer for it. The houses on a business street are intended primarily for trade, and the loss of their use for this purpose is an immediate consequence of an obstruction to the street. The owner or occupant has the right to the free use of the street for access to them.

But the traveler in the highway occupies a different position. His right is to the use of the street for travel. His traffic is incidental to his right of passage merely. And he may or he may not suffer injury from an obstruction. Therefore, the wrongdoer has not the loss of his traffic in contemplation, and is not bound to make it good, but only the immediate loss, the risk of which he takes.

The owner of adjacent real property can not avoid the loss. The traveler may. Hence a distinction has grown up, which is well stated in *Wetmore* v. *Story*, 22 Barb. 414. This was a bill to enjoin the construction of the Ninth Avenue Railroad through Greenwich street, in New York city, filed by an owner of adjacent property. The court found sufficient special damage to sustain the action in the certainty of injury. Mr. Justice Strong, in deciding the case, said that the owners of real estate abutting on the street might maintain a bill to enjoin, because it was certain that they would sustain special injury by the obstruction to their stores, but a traveler could not because he apprehended danger, even if it were imminent, as where a ditch is dug in the highway

near one's house.   There it would be *imminent*, not *certain*, and it would be one which he would share with the traveling public, and would extend no further than to what might be incurred in the use of the street simply as a passage, and the greater probability or extent of the apprehended injury by reason of propinquity, would not change its character from public to private.

The same distinction is shown by the case of *Smith* v. *The City of Boston*.   There it was held that loss of tenants would constitute special damage, for which a recovery might be had, if the nuisance consisted in the obstruction of the street on which the plaintiff's land abutted, but not where a neighboring street was closed.   For, in respect of the former, the plaintiff has a peculiar private right growing out of his ownership of abutting land; a right to leave the street open, so that there may be access to the realty.   And if it is not open that access is destroyed, and loss of rent or trade is the immediate consequence.   But in respect of the latter, his right does not grow out of his realty, but is that of a traveler or passer merely.   And the law, therefore, does not inquire into his losses as property owner, but only as traveler.

The distinction is between injuries to those rights which are primary, and those which are incidental merely.   The property holder's right to free access to or from his store is a primary right; the traveler's right to free passage is similar.   The consequences resulting to the one may consist directly and immediately in loss of profits; to the other, the direct and immediate damage does not extend beyond a loss of time and convenience.   The loss of trade is remote and incidental.

A physician, hurrying to a patient, meets an unexpected obstacle in the shape of a public nuisance obstructing the street.   He seeks his terminus by a circuitous route, and finds himself a few minutes too late; his place has been taken at the bedside by a rival, and he has lost valuable

practice.   Was it ever in the contemplation of the law that recovery should be permitted in such a case?

Lord Holt puts this well in *Pain* v. *Patrick :* " If a highway is so stopped that a man is delayed in his journey a little while, or some important affair neglected, this is not such a special damage for which an action on the case will lie."

For the attending to the important affair is not, in legal contemplation, with reference to use of the street, the principal but only the incidental business of the individual.   It may be the case of his using the street, but it is the use itself of the street that the injury here effects, not the reason for its use, otherwise the value of the use, instead of being fixed or certain, depends upon the reason for use, and varies with the circumstances of *each* passer, and the question in each case would be, not how much time was lost, or how much expense incurred, but what occasion had the plaintiff to use the street at all? and it would be a good defense to show that he was improperly or unprofitably employed, if such were the rule.

Nor does it effect the result that the trade injured is one habitually carried on in the street.   Frequency of contact with a nuisance can not make that special damage which is not in the single instance.   The principle which governs both cases is the same.   He who once loses a large sum by being delayed from a profitable appointment, is as much entitled to recover as one who often loses small sums by being unable to reach his customers.

It may perhaps be said that a licensed omnibus route is a shop in the street, permitted by public authority, certain to be injured by such a nuisance, which the wrongdoer must have in mind, and the risks of injury to which he takes.   As far as this argument looks to the license for support, it is not tenable, simply because as there is no power in the charter to license routes as such, the omnibus has no higher or greater privilege in the street than any other carriage.   And this privilege, as already stated, is primarily to pass and

repass the immediate injury to which from an obstruction is delay, and incidentally to trade (so far as this trade is not incompatible with the free passage of others and their incidental right to trade), the proximate injury to the incidental right, or the remote or distant injury to the primary right, being loss of profit.

For these reasons, we are of opinion the plaintiffs are not entitled to recover for either of the descriptions of special damage alleged. The one might have been avoided. The other is a remote consequence of the injury. The demurrer was therefore well taken, and there is no error in the record.

SPENCER & STORER, J. J., concurred.

Judgment affirmed.