HENRY v. THE ST. LOUIS, KANSAS CITY & NORTHERN RAIL- WAY COMPANY, *Appellant.*

1. **Proximate Cause**: QUESTION OF LAW. Where the facts are undisputed, the question whether a certain act is the proximate cause of an injury, is one of law for the court.

2. ——— : CASE IN JUDGMENT. A passenger who was told by a brakeman to change cars at a way station, entered another car but was told by one of the company's servants there that he could not remain inside the car as the train was not ready. The passenger, after remaining a short time on the platform of the car, alighted, and while standing on a track near that on which the car was, was injured by another train. *Held*, that his expulsion from the car was not the proximate cause of the injury

3. **Negligence, Irrelevant when.** A passenger being on the company's track under circumstances which did not create any duty on its part towards him, the fact that the company was guilty of negligence short of willful, was irrelevant.

*Appeal from Chariton Circuit Court.*—THOMAS SHACKLEFORD, ESQ., Special Judge.

REVERSED.

*Wells H. Blodgett* for appellant.

1. An injured passenger is without remedy, unless the injury could have been avoided by the exercise of ordinary care on his part, after becoming aware of the danger to which he was exposed. As to passengers projecting their arms and elbows from windows, see *Todd v. R. R. Co.* 3 Allen 18; *Pittsburg & C. R. R. Co. v. Andrews*, 39 Md

329; s. c, 17 Am. Rep. 568; *Pittsburg, etc., R. R. Co. v. McClurg*, 56 Pa. St. 294; *L. & N. R. R. Co. v. Sickings*, 5 Bush 1; *Holbrook v. R. R. Co.*, 12 N. Y. 236; *Ind. & Cin. R. R. Co. v. Rutherford*, 29 Ind. 82. As to passengers jumping off and on trains while in motion, see *Nelson v. R. R. Co.*, 68 Mo. 593, and cases cited. As to passengers leaving trains at unsafe places, instead of by platform, see *Forsyth v. R. R. Co.*, 103 Mass. 510; *Frost v. R. R. Co.*, 10 Allen 387; *Penn. R. R. Co. v. Zebe*, 33 Pa. St. 318. As to passengers going on track without reason, after having left the train, see *Bancroft v. R. R. Co.*, 97 Mass. 275; *L. S. & M. S. R. R. Co. v. Hart*, 87 Ill. 529. As to riding on engine, pilot or cow-catcher, see *B. & P. R. R. Co. v. Jones*, 95 U. S. 439; *Robertson v. R. R. Co.*, 22 Barb. 91.

2. The act of the defendant's servants in ordering the plaintiff out of the car was not the proximate cause of the injury. The proximate cause of the injury was the act of the plaintiff in placing himself out of sight behind the flat car on the side-track. This act was the result of deliberate thought and independent action on his part. In going where he did he was not fleeing from danger, nor was he directed, invited or allured by any act or word of the defendant. ˙ Assuming that plaintiff had a lawful right in the car, yet no one could foresee or expect that, if excluded, from the car he would go and stand behind the flat car between the rails on the side-track. The act of standing upon the side-track behind the flat car was not to be expected as a result of ordering him out of the car.

3. The plaintiff had no right to assume that the bell would be rung, the whistle sounded or light hung out, for the defendant owed no such duty to him in the position he was when injured.

*C. H. Mansur* for respondent.

The question whether the plaintiff had acted as a prudent man would have done under the same circum-

stances, was a question for the jury. After being expelled from the car, he had a right to remain near the train to be able to go along with it when it started.

HOUGH, J.—This is an action to recover damages on account of certain personal injuries received by the plaintiff and resulting from his being knocked down and run over by a flat car of the defendant while standing behind said car and between the rails of one of defendant's tracks in its switch-yard, in the town of Moberly, on the night of September 7th, 1876.

On the day of said 7th of September, the firm of Platter, Crow & Co., of which plaintiff was a member, shipped a car-load of horses from Chillicothe to St. Louis, over the railway of the defendant, under a contract which entitled the plaintiff to transportation on the train hauling his stock. He got on the caboose car of the freight train on which his stock was, at Brunswick, and reached Moberly in safety about 11 o'clock p. m. of the same day. When the train reached the round-house west of the passenger depot at Moberly, the caboose was detached and the train was run down into the lower end of the company's yard, east of the passenger depot, where a train was to be made up to go on to St. Louis, having in it the car containing plaintiff's stock. When the caboose was detached, the brakeman said to plaintiff, "You get out and go down to the other caboose; this caboose goes no further." Plaintiff was also informed that his train would start from the lower or eastern end of the yard, in the course of an hour or two. Thereupon plaintiff and one Wagner, who was also going to St. Louis on the same train with plaintiff, got out and walked to the depot, and after remaining there about an hour, went eastward to the lower end of the yard to find their train. The night was quite dark, neither moon nor stars were shining, but it was light enough to enable plaintiff to distinguish his gray horses in the car, when close to them. When he found the train containing his

stock, which appeared to be made up and ready to go, he and Wagner walked immediately back to the east or forward end of the caboose, which was at the rear or west end of the train, and got upon the platform of that car. Wagner tried the door of the caboose, but. failed to open it, and after remaining on the platform a few moments, the plaintiff becoming uneasy, tried the door and opened it and walked in. The car was dimly lighted by a lantern, and as plaintiff was about to seat himself, some person who was reclining on the opposite side of the caboose asked him what he was doing in there. The plaintiff stated that he had stock upon the train, whereupon the other gruffly said : " Get out of here; the train is not ready." Plaintiff thereupon went out on the platform of the car, where Wagner was, and the two remained there several minutes conversing and studying what to do. The yard contained five parallel tracks. The car on which they stood was on the center track, and there were two tracks on either side, with spaces between about six feet wide: Plaintiff had never been in the yard before, but he knew it was the switch-yard of defendant. Wagner stepped down from the platform of the caboose and turned to go west toward the depot; the plaintiff also left the platform, but wishing to remain near the caboose so he could conveniently jump on when they commenced pulling up the train, he walked south across the first track, which was unobstructed as far as he could see, both east and west, and went to the second track, and stepped between the rails of the second track immediately behind the east end of a flat car which was standing on said track, intending to get upon the flat car and remain there until his train was ready to start. There were other cars west of the flat car, but none east of it. As plaintiff stepped upon the track he put his hand upon the flat car, and finding that they had been hauling dirt upon it concluded that he would not soil his clothes by getting upon it, and he then turned around and was standing with his back toward the car, and was about to move

away, when the flat car was struck by cars pushed against it from the west, and it ran over him, crushing his leg. Plaintiff heard no engine or train in motion to the rear of him, before he heard the noise made by the concussion of the cars, when he was struck, and he saw no light in the direction from which the cars came, and no light in the yard, save one to the east, and near the forward end of the train on which his stock was. Plaintiff testified that he saw no yardman or brakeman in the yard, at or before the time of his injury; that if there were any near enough to see him, he did not see them, and that if there had been a brakeman on the rear of the train pushed in on the track on which he was injured, such brakeman could not have seen him at the distance of two or three car lengths. The foregoing are all the material facts that appear in the testimony for the plaintiff, and no additional facts material to the plaintiff's case appear in the testimony offered by the defendant.

That portion of the petition, which sets forth the facts constituting the negligence of the defendant, relied upon as giving a right of recovery, is as follows:

" Plaintiff avers that he was rightly in said caboose car, and that he had the right to be and remain there, and to be conveyed therein to the city of St. Louis. But plaintiff avers the further fact to be, that defendant, by its agents and employes in charge of said train and caboose, so made up anew, wrongfully, and by force and violence, and without any cause or provocation whatsoever, drove out and expelled him (plaintiff) from out of said caboose into the midst of said exceeding great number of side car-tracks and cars then and there being standing, into a place of great danger; and plaintiff avers that at once and immediately, and before he had time or could extricate himself from the networks of said car-tracks and cars surrounding him, the defendant, by its agents and employes, so negligently run, managed and backed up another car, or another train of cars, standing on another car-track,

or switch of same main car-track, to which plaintiff had fled when expelled, as aforesaid, from the caboose aforesaid, and that the defendant had no light on the portion of the car-track, or switch of car-track aforesaid, and gave no notice, by ringing of bells or otherwise, to him of moving, running, managing or backing up of any train, or car of any train, on said car-tracks, or any switch of said car-track, and that he (plaintiff) was, without fault or negligence on his part, and without warning, struck in the back and knocked down and run over by said train so moved, run, managed and backed up as aforesaid, whereby plaintiff was then and there greatly injured, damaged, etc."

When there is no conflict in the testimony, and all the causes contributing to produce an injury are known and

1. PROXIMATE CAUSE: question of law. unquestioned, whether a given act in the chain of causation is the remote or proximate cause of such injury, is a question of law for the court.

We think it quite plain that the command of the occupant of the caboose to the plaintiff, to " get out of there"

2. ——: case in judgment. was not the proximate cause of his injury. Conceding that the plaintiff's expulsion from the interior of the caboose, was an unlawful act on the part of the defendant, although the person who ordered him out was not shown to be an employe of defendant and the rules of the company were not offered in evidence, still, the plaintiff was not driven from the platform of the caboose, where, from aught that appears, he might have remained in undisturbed security, until the train was ready to start; nor was he driven, directed nor invited, by any servant of the defendant, into a place of danger from which he was unable to rescue himself before he was run over and injured. It is perfectly manifest from the testimony, that the plaintiff voluntarily and deliberately, in the free exercise of his own judgment and discretion, and for his own convenience, took his station behind the car by which he was injured; and there is not even a scintilla of testi-

mony to the contrary. This voluntary action of the plaintiff; and his consequent injury, cannot in any legal sense be said to have been occasioned by his expulsion from the caboose. They succeeded such expulsion, but they were not the natural, ordinary or probable consequences thereof, and, therefore, not the proximate result of such expulsion. Wharton on Neg., 200, §§ 134, 138; *Haley v. R. R. Co.*, 21 Iowa 15. "The spontaneous action of an independent will," intervened between the expulsion from the car and the injury. The plaintiff acted neither in precipitation, nor under excitement caused by the defendant, but freely and deliberately, and under no compulsive necessity to go where he did. If any injury had happened to him while in the act of prudently obeying the order to get out of the caboose, such injury would have been the proximate result of his expulsion, but after he was out of the caboose, he was entirely free to select his own position, and did so after some minutes of meditation and consultation as to to what course he should pursue.

It is perhaps probable that if the plaintiff had not been ordered out of the caboose, he would not have been injured, but this hypothesis does not establish the legal relation of cause and effect between the expulsion and the injury. If the plaintiff had not left home he certainly would not have been injured as he was, but his leaving home could not, therefore, be declared to be the cause of his injury. As the plaintiff's injury was neither the ordinary, natural nor probable consequence of his expulsion from the caboose, such expulsion, however it might excite our indignation, in the absence of any regulation of the defendant to justify it, cannot be considered in this action, and the legal aspect of the case is precisely the same that it would have been if no such expulsion had taken place. It is to be regarded as if the plaintiff had gone to the caboose and could not get in because it was locked, or being able to get in, choose to remain outside. If the plaintiff at the time he was injured had been on his way to the ca-

boose or otherwise lawfully crossing the track, and before crossing the same had looked and listened and could neither see nor hear an approaching train, he would undoubtedly have a right of action. But he had reached the caboose in safety, and being forbidden to remain inside, and not choosing to occupy the platform, or to stand in the open spaces between the tracks, voluntarily and without any necessity therefor, put himself in a place of danger between the rails on one of the switch-tracks, with knowledge of the fact that he was in defendant's yard, where its cars were shifted and its freight trains were made up. If the plaintiff had taken a seat on the flat car and by the concussion which took place, had been thrown down and run over, it certainly could not be claimed that he would be entitled to recover. He had no right as a passenger or otherwise to get on that car because he had been ordered out of the caboose in which he had a right to be. If there could be no recovery in the case put, we do not see how the plaintiff can have any greater right to recover, because he was injured in the attempt to get on said car.

As the plaintiff was on the defendant's track under such circumstances as did not create any duty on its part 3. NEGLIGENCE, IRRELEVANT WHEN. toward him, beyond that of not willfully injuring him, it is unnecessary to consider whether the servants of the defendant were guilty of any negligence in not having lights and a brakeman on the train backed in from the west or in not sounding a whistle or ringing a bell. *Hallihan v. R. R. Co.*, 71 Mo. 113; *Van Shaick v. R. R. Co.*, 43 N. Y. 527.

The negligence of the plaintiff disclosed by his own testimony, must debar him from recovery. We are of opinion that the circuit court erred in not sustaining the demurrer to the evidence, and its judgment will, therefore, be reversed. The other judges concur, except NORTON, J., who dissents.