DWIGHT and MACOMBER, JJ., concurred.

Judgment and order appealed from affirmed.

---

ALLEN W. SELLECK, RESPONDENT, v. J. LANGDON & CO., APPELLANTS.

*Negligence in constructing a trestle work — when a question for the jury — the injury must be a usual consequence of the manner of construction in question.*

| | |
|---|---|
| 55 | 19 |
| 76 | 139 |

In an action brought to recover damages by an employee, who was engaged in unloading coal-cars standing on a trestle some eight feet high, it appeared that on the afternoon of the accident, and just prior thereto, a wagon, which was being driven along a plank-roadway by the side of the trestle, struck a slanting brace and displaced the support upon which a plank rested along side of which a car was run upon the tracks; that the plaintiff alighted from the car, got on to the platform the usual way, and as he stepped upon the plank, the outer end of which had been supported by the displaced trestle, it tipped and he fell to the ground, breaking his leg.

*Held,* that unless the damage was a usual consequence, in the ordinary course of events, from the manner in which the premises were used, an action to recover such damage could not be sustained.

That if, in view of the business to be carried on at the trestle, of delivering coal from the cars into the wagons by means of the chute, near to the supports of the platform, it was to be expected that the teams and wagons used in receiving the coal would, without negligence or wrong on the part of the persons in charge

of the same, come in contact with the supports, then a case was made for the decision of a jury whether the defendant was guilty of negligence in constructing the platform in the manner adopted, or in not so guarding the structure as to prevent wagons from coming in contact with it.

Appeal by the defendants from a judgment, entered upon the verdict of a jury for $6,000 in favor of the plaintiff, in the office of the clerk of the county of Erie on the 23d day of April, 1889; and also from an order denying a motion for a new trial, which was entered in said clerk's office on the 26th day of April, 1889.

The action was brought to recover for damages sustained by the plaintiff in falling from a trestle-work on the premises of the defendant.

The defendant was a foreign corporation dealing in coal and having a coal-yard and an office in the city of Buffalo. The plaintiff was the defendant's servant, employed as a laborer in and about the yard; and at the time he received the injuries of which he complains, he was engaged in unloading coal-cars standing on a trestle which was eight or nine feet high, constructed by the erection of bents set eight feet apart, fastened together by stringers, upon which the railroad track was laid. The coal-cars were drawn or pushed up the trestle, which was built on an incline, by a locomotive engine. The bents consisted of a ground sill, twelve by twelve, the upright posts and cap being of the same size. It is unnecessary to give any further description of the trestle. It had been erected eighteen or twenty years, and the proof tended to show that some of the timbers were decayed and punky. The plaintiff was injured in December, 1885. During the preceding summer, the defendant constructed on one side of the trestle a plank-walk, which was of the same height from the ground as the top of the caps of the bents, for the use of the men engaged in unloading coal, to walk upon in passing from one car to another, and as a rest for a portable wooden horse used as a support for the screen into which the coal in the car was shoveled and carried over the plank-walk or platform, and dumped into wagons stationed under the lower end of the screen, which served as a chute between the car and the wagon. The platform was supported by spiking a plank two by twelve and twelve feet long on each side of the cap of each bent, which extended beyond the end of the cap three feet, and by the use of another

plank, two by ten, called a brace, which was nailed to the outer end of the projecting plank and extended down to about the middle of the sill, in a slanting position and nailed to a sill, and also to the upright at a point about two feet above the sill, so that the brace stood at an angle of about forty-five degrees. The floor of the platform consisted of three planks, each one foot wide, three inches thick and sixteen feet long; and they were laid so that each plank was supported at each end by one of the brackets and in the middle by two. The ends of the plank came together and did not overlap, so that each end of a plank extended beyond the bracket that supported it some six inches. Along the side of the trestle there was a plank road-way for the teams which came into the yard for coal, received direct from the car by means of the chute. On the afternoon of the accident, and just before it occurred, the plaintiff was in a box-car, the door of which was nearly over one of the bents, and was engaged in shoveling coal into the chute to load wagons. One Davis, who had purchased the coal, came into the yard with a wagon and drove upon the plank-way to receive a load of coal, and as he was driving under the chute the forward corner of his wagon struck the slanting brace nailed to the bent on the side opposite from himself and partially displaced the bracket from its fastenings, so that it did not afford any support for the ends of the plank which rested on the same. All the coal remaining in that car was loaded into this wagon. The plaintiff immediately left the car and came down on to the platform in the usual and customary way, and as he struck the outer plank the end of which had rested on the displaced bracket, it tipped and he fell to the ground beside the wagon and broke his leg. The plaintiff left the car and fell within ten or fifteen minutes after the bracket was displaced. Davis was a purchaser of the coal which was delivered to him from the car. The width of the plank-road-way for the use of the teams and wagons is not stated in the case, but it appears to have been constructed before the platform, and the ends of the plank towards the trestle extended under part, if not the whole, of the platform. The diagram printed with the case showed that the end of the chute extended beyond the outer edge of the platform; and how near to the slanting brace it was necessary to drive, so as to place the wagon in a proper position under the chute, cannot be

correctly ascertained from the evidence. It appears that there was a free yard of considerable space in front of the trestle. When the bracket was struck, it was observed by a workman in the yard employed by the defendant, and the evidence tended to show that he informed the plaintiff before he stepped upon the platform that the same was broken and in a dangerous condition, but this the plaintiff denied, and that was an open question for the consideration of the jury. It did not distinctly appear whether the servant last-named was a fellow-servant of the plaintiff's or whether he repre-sented the defendant in the management of its business at that place.

The duty which it is claimed that the defendant owed the plaintiff and neglected to perform was set out and charged in the complaint as follows : " That it was the duty of said defendant to see that the said platform or walk was built in a proper manner — safe and suitable manner — so that its employees and servants engaged in and about the unloading of said cars could safely stand upon and walk along said platform or walk without danger or injury to life or limb ; that said platform or walk was built in a careless, unskillful and negligent manner ; that the persons employed in the building thereof were not carpenters or builders, and were utterly incompetent to do the said work in a safe and proper manner, as the defendant well knew ; and that said platform or walk was so constructed as to be unsafe and dangerous for persons to stand upon and walk along without great danger to life or limb ; that on the 13th day of November, 1885, it became necessary for the plaintiff in the course of his said employment to step upon said platform, and he did step and stand upon said platform, and while so standing upon the said platform, and without any fault or neglect on his part, and without any knowledge on his part of the unskillful construction and dangerous and unsafe condition of said platform, and by reason of the defective construction of said platform, as hereinbefore stated, a portion of the said platform, upon which the plaintiff stood, broke and gave way, precipitating the said plaintiff to the earth and sidewalk below, thereby breaking his leg," etc.

There was no averment in the complaint that the platform became insecure and unsafe for use in consequence of the injury to the same caused by the act of Davis in displacing the bracket.

The defendant moved for a nonsuit, which was denied and an

exception taken. Exceptions were taken to the charge as made, and to the refusal to charge as requested.

*Spencer Clinton*, for the appellants.

*George T. Quinby*, for the respondent.

Barker, P. J.:

The defendant, as the master of the plaintiff, owed him the duty of keeping in a reasonably safe and secure condition the staging or platform constructed for the use of the men engaged in unloading the coal cars standing on the trestle. This the defendant admits. After reading the evidence with care and attention, we think it may be asserted, without successful contradiction, that if the bracket which supported the end of the plank at the point where the plaintiff stepped upon the platform in descending from the car had not been displaced by the act of Davis, in driving his wagon against it, the same would have been in a safe and secure condition for use, and the plaintiff would not have received the injuries of which he complains. This is the conclusion which we have reached after giving the case our best consideration. After the accident, the bracket was restored to its former position, without giving it additional strength, by adding new timbers, and the use of the platform, before and afterwards, demonstrates to our minds that it would not have given way at that time, except from the injury which happened to it immediately before it fell. It is not understood by us that the learned counsel for the respondent, in his oral or printed argument, contends to the contrary. It, therefore, clearly appears, and must be so held in disposing of the questions presented by this appeal, that the proximate cause of the plaintiff's injury was the act of Davis, who drove the wagon against the bracket and pushed it from its proper position and caused the platform to be in a dangerous condition until it was repaired.

It is contended by the defendant that it is not liable to the plaintiff for the injury which happened to him in consequence of the act of Davis, as he was not its servant nor subject to the orders of its manager; that, if he was guilty of negligence in breaking down the platform, the plaintiff must look to him for indemnity. In this connection we may state the plaintiff's position, which is, that the

platform was weak and constructed in a faulty manner, and was exposed to the danger of being injured and broken down by teams and wagons used by those who came into the defendant's yard by its invitation to receive coal from the cars placed on the trestle; that the platform was erected for the purpose of facilitating the unloading of cars and transferring coal by means of the chute directly into the wagons of the buyers, to whom the same was delivered at the mouth of the chute, which was supported in part by the wooden horse which stood on the platform. To accomplish this the wagons, both empty and loaded, were necessarily driven so near the slanting braces that there was actual and constant danger of their coming in contact with the same and displacing the brackets, and thus leaving the platform in an unsafe and dangerous condition; and that the defendant was guilty of negligence in not constructing the platform with greater strength, so that it might receive without injury a jar or blow produced by being struck by a wagon, or in neglecting to guard the supports of the platform so that they could not be injured by the teams and wagons when driving to and from the coal chute.

The chief point made by the appellant for the purpose of securing a reversal of this said judgment is, that the displacing of the bracket by the act of Davis was the proximate cause of the accident, and not the faulty manner in which the platform was constructed, if it was faulty at all; and that such defect in construction was merely one of the incidents in the train of circumstances preceding and connected with the accident, but not, in legal contemplation, the cause of the same. From the evidence, as now presented, we think the disputation between the parties on the question of the defendant's negligence presents a question of fact to be determined in the same way as other questions of fact are disposed of in this class of cases. There is often much difficulty in ascertaining in cases as they arise the line between the proximate and the remote causes of a wrong for which a remedy is sought, but all the cases recognize the general rule to be that the law takes cognizance only of those consequences which are the natural and probable result of the wrong complained of, and which may reasonably be expected to result, under ordinary circumstances, from the misconduct or breach of duty charged upon the defendant. Wharton, in his work on Negligence (§ 73), says:

"Negligence is the juridical cause of an injury when it consists of such an act or omission on the part of a responsible human being, as in ordinary and natural sequence immediately results in such injury." Again, he says (§ 78): "Nor when we scrutinize the cases in which the test of 'reasonable expectation' is applied, do we find that the 'expectation' spoken of is anything more than an expectation that some such disaster as that under investigation will occur on the long run from a series of such negligences as those with which the defendant is charged."

Judge COOLEY, in his work on Torts (p. 69), states this principle of legal causation as follows:

"If the wrong and resulting damage are not known by common experience to be natural and usual in sequence, and the damage does not, according to the ordinary course of events follow from the wrong, then the wrong or damage are not sufficiently joined or concatenated as cause and effect to support an action." In *Lowery* v. *The Western Union Telegraph Company* (60 N. Y., 198). Judge ANDREWS, who prepared the opinion of the court, in commenting upon the rule, says: "The law does not undertake to hold a person who is chargeable with a breach of duty towards another, with all the possible consequences of his wrongful act. It, in general, takes cognizance only of those consequences which are the natural and probable result of the wrong complained of, and which, in the language of POLLOCK, C. B., in *Rigby* v. *Hewitt* (5 Exch., 240), may reasonably be expected to result, under ordinary circumstances, from the misconduct. Every injury is preceded by circumstances, if any one of which had been wanting the injury would not have happened. In some sense, therefore, each is a cause of the injury, but to fasten a legal responsibility for the injury upon every person whose wrongful act, however remote therefrom, had contributed to bring about a situation or condition which made the injury possible, would be an impracticable rule, and one which, if enforced, would, in most cases, inflict a punishment wholly disproportioned to the wrong. There is no serious conflict of authority in the statement of the general rule, that a wrong-doer is liable only for the natural and proximate consequences of his wrongful act."

In *Butler* v. *Kent* (19 Johns., 228), the rule is stated in this language :

" In cases of torts it is necessary to show that the particular damage in respect of which the plaintiff proceeds must be the legal and natural consequence of the wrongful acts imputed to the defendant." In *Lewis* v. *Railroad Company* (54 Mich., 55), it appeared that a passenger on a train was carried past his station on a dark night, and misinformed by the conductor where he was. Through the misinformation he took a route which led him over a culvert, and slipped and fell into it and was injured. It was held, (1) that the company's negligence in carrying him past the station and giving him the misinformation was not the proximate cause of the injury ; and (2) that in an action for an injury the courts cannot go back of the proximate cause, and as between other causes preceding that, select one rather than another upon which to permit a recovery. (See, also, *Selleck* v. *Railroad Co.*, 58 Mich., 195 ; *Daniels* v. *Balentine*, 23 O., 532 ; *McClary* v. *Railroad Co.*, 3 Neb., 44 ; *Henry* v. *Railroad Co.*, 76 Mo., 288 ; *Ryan* v. *Railroad Co.*, 35 N. Y., 210.)

From these various authorities it may be stated, as the true and guiding rule, that, unless the wrong and damage are known to be usually in consequence, the damage, according to the ordinary course of events following from the wrong, they will not support an action. If in this case the evidence would justify the conclusion that, in view of the business to be carried on at the trestle of delivering coal from the cars into the wagons, by means of the chutes near to the supports of the platform, it was to be expected that the teams and wagons used in receiving the coal would, without negligence or wrong on the part of the persons in care of the same, come in contact with the supports, then a case was made, as we think, for the determination of the jury, whether the defendant was guilty of negligence in constructing the platform in the manner adopted, or in not guarding the structure so as to prevent the teams and wagons from coming in contact with the supports of the platform. We incline to the opinion that a case was made for the jury with proper instructions, and that the nonsuit was properly denied.

But we are also of the opinion that one of the exceptions to the special charge, relative to the liability of the defendant for the injuries which happened to the plaintiff in consequence of the act

of Davis, was well taken. In the general charge no special instructions were given to the jury as to the rule of law which would make the defendant liable for the act of Davis, nor any statement made to them that his act was the proximate cause of the accident. The court, however, did charge the jury that the plaintiff claims that the road for teams to use when loaded with coal going to and from the chute, which loaded the coal into the wagon, was defectively constructed, in that the trestle was liable to be hit by wagons going to and fro, and that, in this particular, there was a defect in the mode of construction, but stated to the jury, in general terms, that the breach of duty imputed to the defendant consisted in the construction of the platform in an insecure and improper manner, and that it was unsafe and unfit for the use of the men in the defendant's service. At the conclusion of the general charge, the defendant asked the court to charge specifically that the defendant is not entitled to recover for injuries received by reason of the plank-way being injured by the coal wagons, such injury not being brought to the knowledge of the defendant, and it having had no opportunity to repair it. To this the court replied, that would be so, "as an abstract proposition." At the same time, the "road being constructed for the purpose of letting wagons in and out, the question as to whether it is fit and properly constructed, and as to whether it was a matter that might contribute to the injury, is one of fact which I submit to the jury." To the refusal of the court to charge as requested and to the charge, as given in response to the request, the defendant excepted.

This request to charge was obviously based upon the defendant's view of the case, that it was not liable for the consequences for the act of Davis in breaking down the support of the platform; and if it be true, as a legal proposition, that it was not in any view of the case responsible to the plaintiff, then the proposition should have been affirmed by the court, because it does not appear that anyone representing the defendant at the coal yards had notice of the condition of the platform before the plaintiff was injured. But, as we have already stated, we think that a case was made for the jury, and it was for them to say whether it was fairly and reasonably to be expected that the wagons, as they approached the chute to be loaded with coal, would be brought into contact with the platform as to

injure it and destroy its safety ; and it was not error to reject the
propositions which the court was requested to charge, as it assumed,
as a matter of law, that the defendant was not liable for the conse-
quences resulting from the acts of Davis.   By the request to charge,
the attention of the court was called specifically to the defendant's
position ; that it was not liable for the consequences of the act of
Davis in driving his wagon against the platform, and the plaintiff
could not recover for the reason that the condition of the platform.
had not been brought to the knowledge of the defendant before the
accident happened.   The remarks of the court which followed the
refusal to charge, and which were put in the form of instructions
to the jury, must have referred either to the platform for
the use of the men, or the plank-road-way for the use of the teams
and wagons ; and whichever was intended by the court, the instruc-
tions were, in substance and effect, that if the same was not fitly
and properly constructed, and might have contributed to the plaint-
iff's injury, then the defendant was guilty of negligence and liable
to the plaintiff · for the damages he had sustained.   In view of the
charge which had already been made, the jury must have under-
stood that the instructions, in substance and effect, embraced the
legal propositions we have stated.   This part of the charge would
have been without any meaning unless the jury were to be guided
in reaching a conclusion by the fact, as they may have determined
it from the evidence, if the court referred to the platform, as the
subject of its remarks, then the error is obvious, for the jury were
authorized to find for the plaintiff if they believed the same was
improperly constructed and contributed in any degree to his injuries.
The rule adopted, rejected the legal proposition that the defendant
was not liable for the consequences resulting from the acts of Davis in
breaking down the platform, unless it was the natural and proper result
of the way and manner the platform was constructed, and ought
to have been foreseen, in the light of attending circumstances.   By
the rule stated in the charge, the defendant's liability was established
if the jury found that the same was improperly constructed and
might have contributed to the plaintiff's injuries.   In a sense, the
platform did contribute to his injuries.   Although Davis was
grossly negligent or intentionally drove against the platform, for the
platform formed a link in the chain of circumstances, which resulted

in breaking the plaintiff's leg, as the plaintiff's own act formed another link when he engaged himself to work for the defendant. If the charge related to the road-way, as I think it did, then it was clearly erroneous, for it is not charged in the complaint that the defendant was guilty of negligence in not keeping the same in repair, nor is there any evidence which would justify the finding that it was not in good order. We are of the opinion that the jury were misled by those instructions which may have resulted in securing to the plaintiff his verdict, and we have no hesitancy in ordering a new trial on this ground, which makes it unnecessary to consider the other exceptions taken by the defendant.

Judgment and order should be reversed and a new trial granted, with costs to abide event.

DWIGHT and MACOMBER, JJ., concurred.

Judgment and order reversed and new trial granted, with costs to abide the event.