Dwight, P. J.
The action was for a personal injury sustained by the plaintiff in the course of his employment by the defendant, and chargeable, as alleged, to the negligence of the latter.
The defendant was a corporation dealing in coal, and having a coal yard with trestles at the city of Buffalo. One of its trestles was employed for loading wagons with coal for delivery to its customers in the city. The plaintiff was a laborer in the defendant’s employ, and was engaged, at the time of the accident, in shoveling coal from cars standing on the trestles into wagons beneath. The trestle was composed of bents of heavy square timbers, each bent comprising a sill, four posts, two upright and two inclined, and a cap, framed together.
The caps supported a superstructure of stringers, ties and rails composing the track on which the cars stood when being unloaded. In order to afford a means of reaching the cars and of passing from one to another, an elevated board foot way was constructed on one side of the trestle at the level of the top of the caps, which were suported by projecting brackets, each consisting of a horizontal arm and abrace, both of plank, attached to the timbers of the bent by nails, the brace extending from the sill, at an angle of forty-five degrees to the end of the horizontal arm. There were two such brackets attached, on opposite sides, to each bent of the trestle, separated by the thickness of the timbers, and the planks of the foot-way made joints between the two.
On the ground at the foot of the trestle was a plank roadway for the wagons which came to be loaded with coal, and a movable chute, resting partly on the footway, carried the coal over the latter structure and into the wagons. Shortly before the accident the driver of one of these wagons, in placing his wagon under the car which was to be unloaded, had struck the brace of one of the brackets with his wheel or a corner of his box, and forced it loose from the timbers of the bent; and the plaintiff, when he had occasion to descend from the car stepped upon planks which were thus deprived of their support at one end, and was precipitated to the ground and the injury resulted of which the plaintiff complains.
The duty of the defendant to use reasonable care to make and keep the foot-way safe for the use of the plaintiff in the discharge of the duties of his employment is conceded. It is also conceded, on the part of the plaintiff, and the court so instructed the jury, that the evidence failed to show any defect in the structure, either in respect to the strength of the materials or the mode of construction, which rendered it unsafe for the use of the plaintiff, so long as it 'remained exempt from external violence. And the *513 contention of the plaintiff is narrowed to the proposition that the defendant was chargeable with negligence in so constructing the supports of the foot-way that they were liable to be destroyed by means which were to have been reasonably anticipated under the circumstances of the case. In other words, that reasonable care for the safety of the structure in question demanded a consideration not merely of the particular use to which it was to be put, but also of the particular dangers to which it was to be exposed. The principle is sound. It was substantially recognized by this court in its decision of the former appeal in this action, same title, 55 Hun, 19 ; 28 N. Y. State Rep., 326; and it formed the sole basis of the submission of the case to the jury on the trial now under review. The jury was instructed that “ if it was fairly and reasonably to be expected” that wagons driven upon the plank road-way for' the purpose of taking coal would come in contact with the supports of the foot-way as they were constructed, and so destroy its safety, then such mode of construction was negligence on the part of the defendant, which, so far, would entitle the plaintiff to recover. There cannot well be any question of the correctness of this instruction. The foot-way and its supports constituted a part of the structure designed for the particular purpose of loading wagons with coal. The system, contemplated the driving of wagons upon the plank-roadway, near enough to the foot of the trestle to receive coal from the chute; and reasonable care for the safety of the men on the foot-way required that its supports should be so constructed as to be reasonably secure from the danger of being struck and thrown down by wagons so employed. Such was the doctrine of the former decision in this case, and the evidence on the last trial was quite as favorable to the plaintiff’s contention in that respect as that given on the former trial.
Counsel for the defendant moved for a nonsuit, at the close of the plaintiff’s evidence, and at the close of the case moved for the direction of a verdict on the ground, among others, that the plaintiff could not recover for any defect of construction in the respect mentioned, “ such defective construction being open to his observation as well as to the defendants; ” and, in support of their exception to the denial of these motions, counsel refer to the case of Williams v. The D., L. & W. R. R. Co., 116 N. Y., 628; 27 N. Y. State Rep., 760, and the cases there cited. Those cases are Appel v. Buff., N. Y. & P. R. R. Co., 111 N. Y., 550; 20 N. Y. State Rep., 90; Gibson v. Erie R. R. Co., 63 N. Y., 449; De Forest v. Jewett, 88 id., 264. They are cited as sustaining the rule “ that a servant who enters upon an employment from its nature hazardous, assumes the usual risks and perils of the service, and of the open, visible structures known -to him or of which he must have known had he exercised ordinary care and observation.” The cases cited do unquestionably sustain the rule quoted, and none of them, we believe, go any farther. All of them, and other like cases, limit the assumption of risk by the servant, outside of the ordinary risks of his employment, to those known to him or of which he must have known had he exercised ordinary care and *514 observation.” There is nothing in the evidence in this case to bring the plaintiff within the rule so defined. He testifies that this “ scaffolding ” in question had only been built, or finished, three or four days before his accident, and it does not appear that he had, during that time, any opportunity to observe its construction underneath the foot-way. There is no rule which imposes upon the servant the duty of an active inspection of the machinery and structures with or upon which he is set at work; he must go where he is sent, and do the work to which he is assigned; and he has a right to assume that reasonable care has been exercised by the master to provide for his safety in so doing, except as to defects and dangers of which he is or must be' presumed to be aware.
The contention that the defendant is not liable for defects of construction which was the work of fellow-servants of the plaintiff, is opposéd to the elementary principles upon which, in such cases, the liability of the master rests. The rule is that the duty of furnishing safe appliances and structures for the work of the servant is-one which is laid upon the master himself, and cannot be delegated by him so as to relieve himself from liability for its neglect.
We find no error in the rulings of the court in the admission and rejection of evidence.
The motion for a new trial presented the question of excessive damages. The plaintiff suffered a fracture of both bones of the lower leg near the ankle. He was confined to his bed six or seven months; did not walk about for nearly a year; the injured leg is two inches shorter than the other; he suffers much pain from rheumatism in that leg, and is permanently crippled in the ankle joint. The recovery of $6,500 was not so clearly excessive as to warrant setting aside the verdict.
The judgment and order appealed from should be affirmed.
Macomber and Corlett, JJ., concuk