THE CITY OF ALBANY, Appellant, *v.* THE WATERVLIET TURNPIKE
AND RAILROAD COMPANY, Respondent.

*Negligence — injury from an electric current carried from a railroad trolley by
a fallen telegraph wire — proximate cause.*

In the absence of evidence showing that the use of guard wires, to prevent over-
hanging telegraph and telephone wires from falling upon the trolley line of a
street surface railroad single trolley electric system, is necessary or usual in the
construction of such a system, the failure to maintain such guard wires does
not constitute negligence on the part of the railroad company.

If a telegraph or telephone wire, suspended over the trolley wire of a street sur-
face railroad company operating the single trolley electric system, in the man-
ner in which that system is ordinarily applied in the propulsion of street cars,
breaks and falls upon the trolley wire, which is at the time in its proper place,
necessarily uninsulated, performing its necessary and proper functions in the
propulsion of cars, and then falls, while resting upon the trolley wire, upon
a horse in the street, and thus communicates a deadly electric current from the
trolley wire to the horse, which kills the latter, the trolley wire cannot be said
to be the proximate cause of the injury, so as to entitle the owner of the horse
to maintain an action for damages against the railroad company on the ground
of its negligence in the construction and operation of its trolley system.

APPEAL by the plaintiff, The City of Albany, from a judgment of
the County Court of Albany county in favor of the defendant,
entered in the office of the clerk of that county on the 24th day of
February, 1893, upon an order dismissing the complaint at the close
of the plaintiff's case upon the trial.

*John A. Delehanty*, for the appellant.

*Marcus T. Hun*, for the respondent.

MAYHAM, P. J.:

This action was prosecuted by the plaintiff to recover damages
alleged to have been sustained by the negligence of the defendant
in the construction and operation of its trolley for the propulsion of
its railroad cars, by reason of which the plaintiff's horses were injured
by electricity.

The defendant owns and operates a surface street railroad through
Broadway in the city of Albany. At the time of the alleged injury
a violent storm of wind broke or detached telephone or telegraph

wires which were elevated above the trolley wire of the defendant's railway, and also the trolley wire of the Albany Railway Company, operating a line of street cars through State street in the city of Albany, which two railway lines intersect each other at the junction of Broadway and State street in said city ; and such broken or detached telephone or telegraph wires fell upon the trolley wire of one of these railroads, at or near their point of intersection, by means of which a powerful current of electricity was transmitted to such broken wire, in which the horses of the plaintiff were, while properly upon such public street, entangled and killed, or seriously injured, by such electrical current. The question as to which of these railroad trolleys connected with the broken wires of the telephone or telegraph companies, and thus furnished the current which produced the injury, was sharply contested on the trial, the plaintiff seeking to connect the defendant's trolley wire with it by the evidence, and the defendant seeking to show that the current came from the electric light wires, or the wires of the Albany Railroad Company. That the injury resulted from a current from one of these powerful electrical agencies was established beyond question, and substantially conceded on the trial, and upon the question as to whether or not the current came from contact with the defendant's trolley wire, or span wires, there was, we think, sufficient evidence to raise a question of fact for the jury.

It is true that no witness traced the telephone or telegraph wire which communicated the current to the horses, directly from the horses to the defendant's trolley or span wire, but the witness who cut the wire in which the horses were entangled gave the general direction of the same towards the defendant's trolley and span wires, and the testimony of Hawley and McNamara tends strongly in the same direction, so that if the case had turned upon that point and a jury had found for the plaintiff upon that evidence, the court would not be authorized to set it aside as wholly unsupported by evidence.

The inference could have been fairly drawn from this evidence that the current was communicated from the defendant's trolley or span wires, and in such case it is for the jury to decide. (*Hart* v. *Hudson River Bridge Co.*, 80 N. Y. 622 ; *Bernhard* v. *Rensselaer, etc., R. R. Co.*, 32 Barb. 165, affirmed in 1 Abb. Ct. App. Dec. 131.)

But if the jury had found that the current which caused the injury proceeded or was diverted from the defendant's trolley, or cross or span wires, still the plaintiff could not predicate the right of recovery upon that fact alone, unless there was some evidence that the defendant was guilty of negligence in the construction or maintenance of its line. The right of the defendant to use electricity as a motive power or energy upon the single trolley plan is not denied, and unless by its negligent use the plaintiff was injured it cannot complain, and I find no evidence in this case that its use in this instance was not in the manner in which it is ordinarily applied in the propulsion of street cars, and the only precautionary measure suggested by the evidence is by suspending a guard wire over the trolley and span wires, so as to prevent telephone and telegraph wires, suspended above it, from falling upon those uninsulated and highly charged wires, and I find no evidence that such guard wires are either necessary or usual in the construction of single trolley lines for propelling street cars.

Under these circumstances was there any evidence of negligence which the court could have submitted to the jury upon which a recovery could be had? If the proof had established beyond any doubt that the telephone or telegraph wire had fallen upon the trolley wire, and thence on the plaintiff's horses, and thus communicated a deadly current to the horses, so long as the trolley, which cannot be insulated, was in its proper place, performing its necessary and proper functions in the propulsion of cars, could it be said to be even the proximate cause of the injury?

Within the adjudged cases upon this subject in this State we think not.

It is quite clear that the proximate cause of this injury was the falling of the telegraph or telephone wire upon the live trolley wire of one or the other of these lines of railroad. Had not that occurred there is no claim that the electricity from the trolley wire of the defendant's railroad could have communicated with or injured the plaintiff's horses.

The construction and operation of the defendant's railroad by a single trolley power was not the direct, necessary and natural cause of the injury complained of. But for the occurrence of other events, over which the defendant had no control, the injury could

not have happened. The doctrine is so old as to be elementary that the injury for which damages are claimed in actions for wrongs, must be the natural consequence of the wrong complained of.

In *Butler* v. *Kent* (19 Johns. 228), SPENCER, Ch. J., in discussing this principle, uses this language : " In cases of *torts* it is necessary to show that the particular damages in respect of which plaintiff proceeds must be the legal and natural consequence of the wrongful acts imputed to the defendant."

In *Selleck* v. *Langdon* (55 Hun, 26) the court uses this language : " In an action for an injury the courts cannot go back of the proximate cause, and as between other causes preceding that, select one rather than another upon which to permit a recovery," citing in support of that doctrine *Sellick* v. *Railroad Co.* (58 Mich. 195) ; *Daniel* v. *Balentine* (23 Ohio St. 532); *McClary* v. *R. R. Co.* (3 Neb. 44) ; *Henry* v. *R. R. Co.* (76 Mo. 288); *Ryan* v. *R. R. Co.* (35 N. Y. 210).

Wharton, in his work on Negligence, section 73, says : " Negligence is the juridical cause of an injury when it consists of such an act or omission on the part of a responsible human being as, in ordinary natural sequence, immediately results in such injury."

In *Lowery* v. *The Western Union Telegraph Co.* (60 N. Y. 198) ANDREWS, J., in delivering the opinion of the court in commenting upon this rule, says : " The law does not undertake to hold a person who is chargeable with a breach of duty towards another with all the possible consequences of his wrongful act.

" It in general takes cognizance only of those consequences which are the natural and probable result of the wrong complained of, and which, in the language of POLLOCK, C. B., in *Rigby* v. *Hewitt* (5 Exch. 240), may reasonably be expected to result, under ordinary circumstances, from the misconduct.

" Every injury is preceded by circumstances, if any one of which had been wanting the injury would not have happened. In some sense, therefore, each is a cause of the injury, but to fasten a legal responsibility for the injury upon every person whose wrongful act, however remote therefrom, had contributed to bring about a situation or condition which made the injury possible, would be an impracticable rule and one which, if enforced, would, in most cases, inflict a punishment wholly disproportionate to the wrong."

In *Selleck* v. *Langdon* (55 Hun, *supra*) the plaintiff sought to recover for an injury sustained by the falling of a platform on which he was employed to work, occasioned by the prop on which the platform rested being knocked out by vehicles visiting the platform to remove coal, and the court, in reversing a judgment in favor of the plaintiff, after reviewing the authorities upon this question, uses this language: "From these various authorities it may be stated, as the true and guiding rule, that unless the wrong and damage are known to be usually in consequence, the damage according to the ordinary course of events following from the wrong, they will not support an action."

In *Allen* v. *The Atlantic & Pacific Telegraph Company* (21 Hun, 22) the plaintiff sought to recover for injuries resulting from the falling of a telegraph pole which was knocked down by being run against by a runaway team, although the pole was at the time somewhat decayed, and TALCOTT, J., after an exhaustive review of the authorities, sums up his opinion in the following words: "If, therefore, the proximate cause of the breaking of the pole, whereby the accident to the plaintiff was occasioned, was the collision with Chubb's team, we do not think the defendant was liable for the consequences of the accident."

Applying the principle of these decisions to the evidence in the case at bar as it appears in the record, we do not think it was error for the learned trial judge to dismiss the plaintiff's complaint.

We have examined the exceptions taken by the plaintiff to the rulings of the trial judge in the receipt and rejection of evidence, and see no error for which the judgment should be reversed.

PUTNAM, J., concurred; HERRICK, J., not acting.

Judgment affirmed, with costs.