WILLIAM J. CLARKE *v.* THE CITY & SUBURBAN TELEPHONE ASSOCIATION AND THE RECEIVERS OF THE MIAMI ERIE CANAL TRANSPORTATION COMPANY.

The reciprocal relation of duty and obligation between two public utility companies, having rights in the streets secondary to those of the public for ordinary travel, extends as to each other only to the extent of avoiding acts of omission constituting willful negligence; and hence a repairer of telephone lines who is injured while attempting to string a damaged and imperfect wire by its coming in contact with an unguarded and uninsulated wire of another company carrying a current of dangerous voltage, has no cause of action against such other company.

HOSEA, J.

Heard on demurrer.

The pertinent facts disclosed by the petition in this case are as follows:

That the plaintiff, an employe of the telephone association, was engaged in stringing a wire across the "live" wires of the transportation company at a point where the wires of the two companies cross, and that said wire while being placed in position loosened and fell upon one of the wires of the transportation company, charged with a current of high voltage used in its business, and that the injury complained of ensued thereby.

The negligence claimed against the receivers is (1.), that they maintained their wires in an unsafe and dangerous condition; (2) that their wires were "apparently insulated, but not in fact insulated," which was known or might have been known by the exercise of ordinary care to the receivers, but was not known to plaintiff; (3) not inspecting their wires to ascertain whether they were in safe and proper condition—all without plaintiff's knowledge; (4) not maintaining a non-conductor or guard wire between said crossing wires to prevent contact.

He further alleges that his duties were to repair and to string telephone wires, and that his employment compelled him to work among wires carrying high and dangerous voltages of electricity; and further, that the particular wire he was stringing in the present instance was "damaged and in an imperfect condition," and claims negligence against his employer as to the "quality of the wire selected to be placed at said point," in a position that brought the wires within an unsafe and dangerous distance.

The demurrer is for want of facts sufficient, etc.

"Negligence," as has been well said, "is not absolute or intrinsic, but is always relative to some circumstance of time, place or person." *Needham* v. *R. R.,* 37 Calif., 410.

And it is a familiar rule that the omission of a duty is not the foundation of an action, unless it results in injury to one for whose protection the duty is imposed. *Burdick* v. *Cheadle,* 26 O. St., 393; *Erie R. R.* v. *McCormick,* 69 O. S., 45.

In cases of the nature of that under consideration, an obligation of care and a corresponding liability for negligence, are based upon the primary right of the public to the use of the streets for ordinary travel, and the theory that a *quasi* public use for certain other purposes when properly conducted is no impairment of the primary right. The secondary use, therefore, carries with it the obligation to use proper means for the protection of the public against injury arising out of the secondary use, through negligence in respect of such means of protection. The duty of proper maintenance and protection to the public is therefore inherent in the secondary use of a public street.

But upon what principle can a reciprocal relation of duty and obligation be said to exist between two secondary users of streets, in respect of such use, except as to non-interference and avoidance of acts of omission constituting willful negligence?

The plaintiff here was the servant of the telephone company—not of the receivers. In taking service with the company he assumed all ordinary risks of the business as it existed and was conducted, excepting negligence of his

employers in respect of duties toward himself. The string-
ing, placing and repairing of wires, and working among
wires carrying high voltages of electricity, were, as he ad-
mits, among the incidents, and, consequently, the risks of
his employment. The crossing of the telephone wires over
those of the receivers at the place mentioned was a condition
known to him. The absence of guard-wires between those
of the telephone company and the transportation company
was an existing visible incident of the situation where he
was at work when he entered upon it.

The extent to which courts have gone in holding parties
to accountability for omission to provide guards under such
circumstances, is in cases where a crossing wire, above a
"live" wire, is negligently supported so as to be oviously lia-
ble to fall or sag into contact and thereby endanger the
safety of the public using the streets. This is illustrated in
the two cases cited against the demurrer in the briefs
of counsel.

Thus, in *McKay & Roche* v. *Telephone Co.*, 6 Am. Elec.
Cas. (Ala.), 223, the case depended to some extent upon a
municipal requirement for guard wires, yet the court in
its opinion rested its judgment chiefly upon the fact that
the telephone wire was maintained with the knowledge of
the street railway company upon "frail, weak and inse-
cure supports, likely to give way and precipitate the tele-
phone wire upon the line wire below." The court found
that this condition, being a fact in evidence, enlarged the
duty and obligation of the railway company in its relation
to the public to protect them against this impending dan-
ger—just as would be the case of an ordinary railway com-
pany having notice of a rock or dead tree at the side of
its roadway "which it had constantly recognized as threat-
ening to fall" upon the track.

So, also, in *Telegraph Co.* v. *Baltimore City Ry. Co.*, 6
Am. Elect. Cas., 210, the negligence found was permitting
a sagging telephone wire, negligently attached, to swing
and rub against a feed wire of the railway company, for two
weeks, and thus wear through the insulation.

It will be observed that in both of these cases the injury

was to passers-by on the street; yet, the obligation of care and corresponding liability for negligence is imposed on the defendant street railway company in respect of guard-wires, only because of conditions known, or so long existing as to finally produce the injury complained of. The negligence was in ignoring conditions that immediately threatened; and it is manifestly proper to hold that in respect of the independent duty owing to the public by one who maintains dangerous agencies, it makes no difference who or what occasions the threatening conditions. It is the existence of threatening conditions, and the notice thereof, direct or presumptive, that raises the duty to provide against the happening of the dangers which these conditions portend.

The case in hand presents no such conditions. The receivers had a right to presume that in stringing or repairing wires at the point in question the telephone company would exercise due care, employ properly skilled servants, and use proper material. As the receivers are not required to anticipate negligence, they can not be required to anticipate and provide against its consequences, except it be a visible negligence tending to obvious and definitely dangerous consequences as already shown. Certainly they could not be held to anticipate consequences flowing from the act of stringing defective wire by the telephone company.

In fact, the weight of authority is to the effect that while the absence of guard-wires may be an element of negligence, it can not be said, as a matter of law, that either or both of two companies maintaining different lines of wire in the same street, are bound, in the absence of negligence, to maintain guard-wires for the purpose of preventing the harmless wire of one from coming in contact with the dangerous wire of the other. Kenby on Elect. Wires, Section 269; *Albany* v. *Waterlict, etc., Co.,* 76 Hun., 136; *Block* v. *Milwaukee,* 89 Wis., 371; *Lincoln St. Ry. Co.* v. *Cox.,* 47 Neb., 807.

*Calumet St. Ry. Co.* v. *Grosse,* 70 Ill., 81, presents a state of facts quite similar to those of the present case and the decision is in line with the views herein expressed. How

far these views might receive support from the fact that the wire system of the receivers is maintained upon a right of way leased to the M. & E. Canal Transportation Company by the state, and not upon a public street, I have not considered; although it might, in an ultimate consideration, be important.

No facts are pleaded in the petition raising any obligatory relations in law, in respect of the maintenance by the receivers of the wire system in question, toward the plaintiff, and this is fatal to the action so far as it affects the receivers as defendants; consequently, as to these the demurrer must be sustained, and it is so ordered..

Demurrer sustained.

*John P. Ryan* and *Renner & Renner,* for plaintiff.
*Ellis G. Kinkead* and *Geo. H. Warrington,* contra.